ROBERT I. SCHWARTZ vs. A. GORDON ROSE[1] & others.[2]

Berkshire. January 6, 1994. - June 6, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence*, Hearsay, Admitted without objection. *Contract*, Sale of real estate, Rescission. *Real Property*, Sale. *Consumer Protection Act*, Damages, Interest.

In a civil action, the defendant waived its claim of error regarding the admissibility of a letter that it had not objected to but in fact had stipulated to. [46]

In a civil action, ample evidence supported the judge's findings in every respect. [46]

In an action seeking rescission of a contract for the sale of land and alleging a violation of G. L. c. 93A, § 2, where the judge ordered the transaction rescinded due to a wilful and knowing violation of c. 93A, he properly excluded the purchase price from the amount of damages subject to multiplication [47-48] and he properly included (and trebled) as damages the amount of interest lost on the purchase price between the closing on the property and the date of the order of rescission [48-49].

CIVIL ACTION commenced in the Superior Court Department on September 15, 1989.

The case was heard by *William H. Welch*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*David O. Burbank* for the plaintiff.

---

[1]As general partner of Rose Land Co., Ltd. It appears from the record that Rose is now deceased and that Henry Rose, Eve Rose, and Jonathan A. Rick, as coexecutors of his estate, have been substituted.

[2]Barbara Kolodkin, doing business as Evergreen Realty, and Shepley W. Evans, doing business as Friday & Co. Real Estate. All claims against Kolodkin and Evans were dismissed either before trial or by the trial judge in his judgment and order. Neither party is involved in this appeal.

*Fredric D. Rutberg* (*John S. Leonard* with him) for the defendants.

LIACOS, C.J. Both parties appeal from a judgment of the Superior Court. A judge of the Superior Court ordered rescission of a contract for the sale of land in Richmond wherein the plaintiff, Robert I. Schwartz, was the buyer and the defendant, A. Gordon Rose, as general partner of Rose Land Co., Ltd. (Rose Land), was the seller. The judge ordered Rose Land to return to Schwartz the purchase price of $270,000, upon which Schwartz would reconvey the parcel to Rose Land by quit claim deed. Having found a wilful and knowing violation of G. L. c. 93A, § 2 (1992 ed.), the judge ordered that the damages be trebled. See G. L. c. 93A, § 9 (1992 ed.). For purposes of trebling the damages, the judge included $12,489 for various enumerated incidental expenses incurred by Schwartz, and $93,240 for interest lost on the purchase price from March 14, 1989 (the date of closing), to January 28, 1992 (the date of the Superior Court's decision).[3] This amounted to $105,729, trebled to $317,187. The judge did not include the $270,000 purchase price in the amount to be trebled, reasoning that it was in the nature of equitable relief, and its return was necessary to secure rescission.

In his appeal, Schwartz argues that the judge erred in failing to include the purchase price in the damages subject to trebling. For its part, Rose Land argues that the judge erred in including Schwartz's loss of interest on the purchase money in the amount subject to trebling. In addition, Rose Land argues that the evidence at trial was insufficient to warrant the judge's finding that it violated c. 93A. It also makes several arguments relating to the admission at trial, and the judge's reliance on, a letter from the chairman of the Richmond conservation commission (conservation commission). Finally, Rose Land argues that Schwartz was not entitled to equitable relief in the form of rescission because he

---

[3]It appears that judgment did not actually enter until February 12, 1992.

did not suffer substantial damage and because he took actions which decreased the value of the property. We granted the application for direct appellate review. In all respects, we affirm the judgment and order of the Superior Court.

We summarize the facts. In the fall of 1988, Schwartz sought the assistance of Barbara Kolodkin, a real estate broker, in locating a piece of property on which he could build a new house. His goal was to find a private parcel with a view and enough space to construct a golf green with sufficient space to hit approach shots to the green. Kolodkin called Shepley Evans, whom she knew did a considerable business in land sales. She told him of the plaintiff's desires. On January 7, 1989, Evans showed the plaintiff and Kolodkin a five-lot subdivision owned by Rose Land. The plaintiff was interested in purchasing lots 3 and 4. He wanted to be able to build in the summer of 1989 so he could move in the fall of that year.

Lot 3 was a mainly cleared area of soft earth, wet to walk on in places. The land slopes from a road toward a pond. A very distinct and visible change in vegetation was apparent around the pond. The change coincided with the location of markers which had been placed by wetlands experts, and which marked the boundaries of a wetland around the pond. Lot 4 also sloped down toward the pond. It was heavily wooded and wet and marshy in places. Evans explained to Schwartz that construction could not occur within 100 feet of the pond due to wetland restrictions.

Schwartz offered $250,000 for the two lots. Rose Land counteroffered $270,000. Schwartz accepted. A condition of the counteroffer by Rose Land was that Schwartz would have to "substantially" build his house within a 100-foot "building envelope." The building envelope was shown on a plan prepared by Rose Land's engineer, Foresight Engineering. Foresight warned Rose about staying out of the 100-foot buffer zone around the pond. In February, 1989, A. Gordon Rose, Schwartz, and Evans visited the property. A stake was driven by Rose locating the center of the building envelope for lot 3. The judge found that "[b]y so doing Rose for Rose

Land warranted in effect in accordance with the language of the subsequent purchase and sale agreement under the heading of representations and warranties that a house could be built there." The building envelope so designated by Rose was approximately forty per cent within the wetland area.

We turn to the judge's findings, supported by the evidence, regarding a letter, which Rose Land received from Holly Stover, chairman of the conservation commission (letter). The judge found that:

> "The precise conversation among Evans, Schwartz and Kolodkin as to exactly how the property would be used and who said what was vague. However, on January 2, 1989 the chairman of the Richmond Conservation Commission wrote an unsolicited letter to Mr. Rose . . . which advised Rose that the Conservation Commission understands there are considerable wetlands particularly lot 3, 4, and 5 and bordering vegetated wetlands and *before* there is any alteration of land he should file a request for determination with the commission. A notice to land owners . . . was enclosed and sent to Mr. Rose. He was also informed that the Planning Board had conveyed the information to the Conservation Commission, that the Planning Board had discussed with Rose's representative that one or more of the 5 Lots may not meet conservation requirements.

> "Mr. Rose's assistant Mr. Sanginetti prepared a notice of intent to be filed but Mr. Rose left this in his file and did not file it with the conservation [commission]. He also did not send a copy of the letter to Mr. Evans or Ms. Kolodkin, nor to Mr. Schwartz. Rose's engineer told him the letter concerned him. He tried to claim he sent a copy of the letter to Mr. Evans on January 9, 1989 but this was fabricated testimony and I find it to be wholly untrue."

After the closing, when Schwartz retained an architect and engineer, they learned of the letter. An environmental

engineer then mapped the boundaries and wetland. Schwartz did not want to go through the time and expense of applying for and possibly not receiving permission to build. He sent Rose Land a demand letter pursuant to c. 93A, requesting that Rose Land immediately rescind the transaction and refund the full purchase price. Rose Land refused, and this suit was filed.

A jury-waived trial was held, at the conclusion of which the judge issued a thorough memorandum of decision and order for judgment. The judge found that Rose Land had wilfully and knowingly concealed the existence of the letter or its contents from Schwartz "in the hopes the sale would go through," and that, if Schwartz had known of the letter, the land transfer would not have occurred. The judge concluded:

"[Title 940 Code Mass. Regs. § 3.16] makes it a violation of Chapter 93A § 2 if any person subject to the act fails to disclose to a buyer or prospective buyer any fact the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction. Withholding the . . . letter and not disclosing these facts was an unfair and deceptive act[.] *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 248 (1980). This letter reflecting the position or attitude of the Conservation Commission was a material fact. The action of Mr. Rose in withholding and not disclosing it contrary even to concerns of people in his organization was unethical or unscrupulous[.] *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 679 (1986). Under all the circumstances here I find the conduct of Mr. Rose to be willful and knowing. He had had a previous confrontation with the Conservation Commission. I believe he had a good idea of their attitude relative to development of areas where there were substantial wetlands. Yet he let the plaintiff pay him $270,000.00 knowing full well the plaintiff would have significant problems in trying to develop this land. I believe this calls for a trebling of the c. 93A damages."

The judge also ordered the transaction rescinded. Before we address the principal issue presented in this appeal, i.e., the proper calculation of damages, we shall address the defendants' arguments concerning the validity of some of the judge's findings.

First, the defendants argue that the letter was inadmissible hearsay, and that, since the judge relied on the letter in finding a violation of c. 93A, the finding is unwarranted by the evidence. The short and decisive answer to this argument is that Rose Land never objected to the admission of the letter, and indeed, stipulated to its admission. Rose Land waived its claim of error regarding the admissibility of the letter. See *Commonwealth* v. *Foley*, 358 Mass. 233, 237 (1970).

Next, Rose Land argues that the judge's finding that the letter was a material fact requiring disclosure to Schwartz was clearly erroneous. The basis of this argument is that, according to Rose Land, Schwartz knew or should have known all of the information contained in the letter, and thus, any failure to disclose it, was immaterial. Rose Land goes on to argue that, if disclosure of the letter was required, its failure to disclose it was merely negligent. There was ample evidence to support the judge's findings in every respect. The judge clearly credited the plaintiff's testimony that he had never heard of the existence of bordering vegetated wetlands or the possible need for conservation commission approval. In addition, numerous witnesses testified to the materiality of the information contained in the letter. As to whether the failure to disclose it was intentional or negligent, the judge made detailed findings of the deliberate nature of the failure to disclose. The evidence fully supported these findings and described a scheme to defraud the plaintiff and a scheme to cover up the deception. The judge rejected Rose's testimony that he attempted to disclose the letter to Evans as "fabricated testimony and . . . wholly untrue." There was no error.[4]

---

[4]We also reject the defendants' arguments that Schwartz is not entitled to rescission because he did not suffer substantial damage and because, in

We move now to the central question presented by this appeal: When a transaction is ordered rescinded due to a wilful and knowing violation of c. 93A, is the amount of purchase money refunded to the buyer included in the "damages" subject to multiple assessment under the statute?

The judge reasoned that the purchase price was not subject to multiplication because "[i]t is an essential part of the equitable relief sought to restore that [which] was received in order to secure the relief of rescission[.] *Cherry* v. *Crispin*, 346 Mass. 89, 93 (1963)." We agree.

Section 9 (3) of c. 93A provides in part that:

> "[T]he amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper."

The statute clearly distinguishes between actual damages, which are subject to multiplication, and equitable relief. It is beyond question that rescission is an equitable remedy. See *Cherry* v. *Crispin, supra*; *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 266 (1957).[5] Although an amount of money, here $270,000, is necessary to secure the rescission, this does not make that money itself part of the "amount of the judgment." See G. L. c. 93A, § 9.

Rescission effects a return to the status quo. Nolan & Sartorio, Equitable Remedies § 403, at 545 (2d ed. 1993). When rescission is justified by a violation of c. 93A, the ac-

---

seeking from the conservation commission an official wetlands delineation, he acted to "taint" the value of the property. Both arguments are belied by the record.

[5]The plaintiff seems to suggest that the merger of law and equity disposes of *any* distinction between the two. Of course, this is not so. See *Nei* v. *Burley*, 388 Mass. 307, 314 (1983).

tual damages subject to multiplication consist of the losses suffered by the plaintiff because of the interruption in the status quo.[6] In this case, that consisted of Schwartz's out-of-pocket expenses ($12,489) and the loss of the use of the purchase money between the closing and the order of rescission ($93,240, although the defendants challenge the propriety of this amount). Trebled, this amounts to $317,187. We disagree with the plaintiff that this fails to impose the type of penalty envisaged by the Legislature in providing for multiple damages under c. 93A. See *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 717 (1990). The judge was correct in excluding the purchase price from the treble damages.

The defendants argue that the judge erred in trebling the amount of interest that the plaintiff lost between the closing and the date of the court's rescission order. They claim that this amount is not "damages" because it takes the form of prejudgment interest, relying on *McEvoy Travel Bureau, Inc.*, *supra* at 716-717 (prejudgment interest not subject to multiplication under c. 93A).[7] We disagree. Schwartz suffered the loss of the use of the $270,000 purchase price because of Rose Land's wrongdoing. This is precisely the type of damage we have described as appropriately being subject to multiplication in an action for rescission under c. 93A.

---

[6]We think it important to note that the plaintiff in this case opted to pursue rescission. He could have retained title to the land and sought damages for the loss of its value to him resulting from Rose Land's wrongdoing. Because there is no indication that the property had any fair rental value, we need not consider a possible offset against the plaintiff's claim of damages. We perceive no reason to preclude the exercise of the option to rescind, which ultimately is to the benefit of the defendant in that this repayment of the $270,000 removes this figure from the damages to be multiplied.

[7]The defendants further argue that the fact that the judge apparently calculated the amount of interest by using the statutory rate for prejudgment interest, see G. L. c. 231, § 6C (1992 ed.), means that the amount was prejudgment interest. While the judge could, and perhaps should, have taken evidence on the issue of the value of the loss of the use of the $270,000, we do not believe that he abused his discretion in applying a rate that the Legislature fixed for a similar (though not identical) purpose.

See *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 37-38 (1991), *S.C.*, 412 Mass. 612 (1992). There was no error.

For the reasons stated above, we conclude that, in all respects, the judgment and order of the Superior Court should be affirmed.

*So ordered.*