VOLTERRA, J.
INTRODUCTION
This action arises out of dispute under a lease between the plaintiff Dunkin Donuts of Massachusetts, Inc. (“Dunkin”) as tenant, and the defendants Mac Stewart Bell and Annie W. Bell, Trustees of the Mighty Mac Realty Trust (collectively, “the Trust”) as landlord, with respect to payment of certain electrical charges for common parking lot lighting in a shopping center. Having paid such charges under protest, Dunkin’ now seeks declaratory relief that the lease does not entitle the Trust to payment of said charges, and further seeks damages arising from the Trust’s alleged breach of contract and violation of Chapter 93A.
At a pre-trial conference held on October 10, 1995, Dunkin’ and the Trust agreed to submit the case to the court on brief with oral argument. After stipulating to a statement of facts and to the documentary evidence, the parties were granted until March 22, 1996 to file trial memoranda. This Court held a hearing on the merits of the case on May 28, 1996.
FINDINGS OF FACT
The parties have stipulated to the following facts. On or about September 19, 1967, Dunkin’ Donuts Franchising Corporation (the “Original Tenant”), a predecessor in interest to Dunkin’, Nicholas Vinios and Nicolas Philopoulas (collectively, the “Original Landlord”) entered into a lease (“the Lease”) for a Dunkin’ Donuts shop at a shopping center located at Main Street in Gloucester, Massachusetts. The Dunkin’ shop has been occupied by an independent franchise operator under a sublease from Dunkin’ since it was constructed in 1967. Defendant the Trust acquired the shopping center and the Original Landlord’s interest in the Lease in August of 1986.
The Lease with Dunkin’ is a “triple-net” lease under which Dunkin’ as tenant is responsible for the payment of certain operating costs such as utilities, insurance and real estate taxes. Section 8 of the rider to the Lease states that the “lessee further agrees to maintain and pay the cost of operating the existing *347 four area lights shown on Exhibit B.” Exhibit B to the Lease is a plan which shows four 1,000 watt lights located in the common parking area for the shopping center close to tire Dunkin’ shop. Since 1967, electric service to the shopping center, including the common area lights at issue, has been provided by Massachusetts Electric Company. Prior to October 1991, the Trust paid no charges for electricity related to the common area lights. From the inception of the Lease in 1967 through May of 1993, neither the Original Landlord nor the Trust ever submitted a bill to either the Original Tenant or Dunkin’ concerning the cost of maintaining or providing electricity to the four area lights depicted on Exhibit B to the Lease. Further, Dunkin’ never actually paid for electricity to these common area lights until the Trust presented it with a bill in 1993. As discovered by the Trust in late 1991, the cost of providing electricity to operate the parking lot lights had inadvertently been billed directly to and paid by another tenant of the shopping center, The Great Atlantic and Pacific Tea Company (“A&P”).
After A&P vacated the premises in October of 1991, all the parking lot lights were wired into the Trust’s meter, so that the Trust was billed for electricity charges for the first time since it purchased the shopping center. Accordingly, by letter dated May 14,1993, the Trust made demand upon Dunkin’ in the amount of $37,149.49, which purported to represent the amount that the Trust had determined Dunkin’ owed for electricity charges for the common area lights in past years.[2] Since June 1, 1993, Dunkin’has willingly paid the Trust on a monthly basis for the cost of operating the four parking lot lights. However, Dunkin’ denied that it owed the Trust any amount for past electricity charges. By letter dated August 10, 1993, the Trust notified Dunkin’ that if it failed to pay the electricity costs since the inception of the Lease, the Trust would consider Dunkin’ to be in default under the Lease, and would proceed accordingly.
At the time the notice of default was given in September of 1993, the Lease had approximately 14 years left to run and constituted a valuable asset of Dunkin’. Thus, Dunkin’ paid the demanded sum of $37,149.46 to the Trust under protest, in order to protect its asset. The parties have agreed, based on information provided by Massachusetts Electric regarding the average cost for the lights at issue here, that the annual cost to operate the lights prior to 1993 was $1,423.50. •
RULINGS OF LAW
The purpose of an action for declaratory judgment is “to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations.” G.L.c. 231A, §9 (1994). Chapter 231 A, the declaratory judgment statute, should be liberally construed and administered, id.; Jacoby v. Babcock Artificial Kidney Ctr., Inc., 364 Mass. 561, 563 (1974); Pazott v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 569 (1994). In the present case, there is an actual controversy between Dunkin’ and the Trust as to whether the Trust is entitled under the Lease to payment from Dunkin’ of electric charges for the common parking lot lights incurred prior to January 1, 1993.
Paragraph 10(a) of the Lease contains a covenant by Dunkin’ as tenant “To pay when due the rent and all charges for water, gas, electricity and other utilities furnished to the leased premises.” In addition, in Section 8 of the Rider to the Lease, Dunkin’ “further agrees to maintain and pay the cost of operating the existing four area lights shown on Exhibit B.” The Trust contends that these provisions impose a clear contractual obligation on Dunkin’ to pay the electricity charges for operating the common parking lot lights from 1967 through 1991, regardless of the actions of any third parties such as A&P.
The construction of a lease depends upon the intention of the parties to be ascertained by considering all of its provisions together, and giving the terms used a reasonable meaning in light of the facts to which they apply and the circumstances in which used. Wunsch v. Donnelly, 302 Mass. 286, 289 (1939). A contract such as a lease should be construed as a whole in a reasonable and practical way in a manner which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties. Ryan v. Boston Housing Auth., 322 Mass. 299, 302 (1948); Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987); USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116, rev. den., 406 Mass. 1104 (1989). Moreover, in construing an agreement between two parties, the court should avoid unjust and unreasonable results. Markus v. Boston Edison Co., 317 Mass. 1, 6 (1944).
In the context of a commercial lease for property within a shopping center, utilities such as electricity, gas and water are either provided directly by the utility to the tenant under contract with that tenant, or are provided and paid for by the landlord, who then passes the cost on ratably to the various tenants. The language of paragraph 10(a) of the Lease and Section 8 of the Rider is broad enough to encompass either situation. In fact, however, Massachusetts Electric has provided electricity directly to the tenants of the shopping plaza throughout the term of the Lease. Given that the Trust as landlord neither provided the electrical service to its tenants nor was charged for such service by Massachusetts Electric, the Trust as landlord has no right under the Lease to collect the cost of operating the parking lot lights from Dunkin’. The only rational interpretation of this Lease requires a tenant such as Dunkin’ to reimburse the landlord for electrical charges only in such circumstances where the landlord was actually billed for and paid such charges.
Contrary to the arguments advanced by the Trust, this Court’s interpretation of the Lease neither renders *348 the language in Section 8 of the Rider meaningless nor contradicts the intended purpose of a triple-net lease. The Lease relieves the Trust as landlord from any duty to pay the expense of operating the four common parking lot lights, and imposes such a duty on the tenants, including Dunkin’. The Trust’s right under Section 8 of the Rider thus pertains to the payment of such electricity charges by the tenants, as part of their operational costs, as opposed to payment by itself as landlord. Section 8 of the Rider does not, however, purport to confer upon the Trust any right or interest in the allocation of payment of such electricity charges as between its various co-tenants.[3] To interpret the Lease as requiring Dunkin’ to pay the Trust $37,149.47 in electricity charges for the past cost of operating the four common parking lot lights, despite the fact that said charges were already paid by another tenant, A&P, and were never even billed to the Trust, would confer a windfall upon the landlord. The parties simply could not have intended such an unreasonable and inequitable result.[4]
When construing a lease, the court should adopt a construction that is in accord with justice and common sense and the probable intention of the parties, one that interprets the Lease as a business transaction entered into by practical men to accomplish an honest and straightforward end and that recognizes that every contract implies good faith and fair dealing between the parties to it. Clark v. State St. Trust Co., 270 Mass. 140, 153 (1930); Keating v. Stadium Management Corp., 24 Mass.App.Ct. 246, 252 (1987). In the present case, a common sense, reasonable reading of paragraph 10(a) and Section 8 of the Rider dictates that under the Lease, Dunkin’ covenanted only to either pay the utility directly for the cost of providing electricity to the parking lot lights, or to reimburse the Trust for electricity charges actually submitted to and incurred by the Trust.
This Court thus concludes that the Trust was not entitled to demand and receive from Dunkin’ the sum of $37,149.49, representing the past cost of operating the four parking lot lights for the period January 1, 1983 through December 31, 1992, given that Massachusetts Electric billed such electricity charges directly to Dunkin’s co-tenant, A&P, which then paid them. A claim for money had and received will lie whenever one has in his hands money belonging to another which in equity and good conscience he ought to pay over to the other. Sherman v. Werby, 280 Mass. 157, 160 (1932); G.E. Lothrop Theatres v. Edison Elec. Illuminating Co. of Boston, 290 Mass. 189, 192, 194 (1935). Accordingly, the Trust must make restitution of the $37,149.49 paid by Dunkin’ under protest and received by the Trust under no legal right.[5] This recovery will be without interest, which will be dealt with in conjunction with Dunkin’s chapter 93A claim. See Bertassi v. Allsate Ins. Co., 402 Mass. 366, 372 (1988).
COUNT II: BREACH OF CONTRACT
Further, Dunkin’ contends that the Trust’s actions in threatening to treat Dunkin’ as in default of the Lease unless it paid the past electricity charges constitute a breach of contract, in that the Trust never had a right to collect said charges under the terms of the Lease. It is well established that every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing which provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Drucker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976); Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72 (1993). Under this covenant, the parties to a contract are obligated to deal with each other honestly and in good faith not only with respect to their performance of the contract, but also in their enforcement of the terms of the contract. Hawthorne’s, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 211 (1993).
In the present case, the Trust’s demand that Dunkin’ pay the sum of $37,149.49 for the past cost of operating the parking lot lights, and its threat to treat Dunkin’ as in default of the Lease if Dunkin’ did not comply, constituted a breach of the implied covenant of good faith and fair dealing. Under no reasonable interpretation of the Lease was the Trust entitled to collect electricity charges which it never incurred, and which in any event, had already been paid by a co-tenant. The Trust’s conduct thus violated its obligation to deal honestly and in good faith with Dunkin’ in the enforcement of the terms of the Lease. Compare Anthony’s Pier Four, Inc. v. HBC Assocs., supra at 472-73 (holding that the implied covenant of good faith and fair dealing was breached when one party withheld his approval of construction plans in order to extract more money from the other party under their contract).
COUNT III: VIOLATION OF CHAPTER 93A
Finally, Dunkin’ contends that the Trust’s actions in demanding that Dunkin’ pay the past electricity charges for the parking lot lights violate General Laws chapter 93A. Chapter 93A, §11 prohibits unfair methods of competition and unfair or deceptive acts or practices by those engaged in trade or commerce in business transactions with others similarly engaged. G.L.c. 93A, §11 (1994). In order to constitute a violation of §11, a business act or practice must either be within the penumbra of some common-law, statutoiy or other established concept of unfairness, or must be immoral, unethical, oppressive or unscrupulous. PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593 (1975); Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). Whether a given practice meets these criteria must be determined from the circumstances of each case; however, the conduct at issue must attain a level of rascality that would raise an eyebrow of someone inured to the rough and *349 tumble of the world of commerce. Levings v. Forbes & Wallace, Inc., supra at 504; Doliner v. Brown, 21 Mass.App.Ct. 692, 698 (1986).
It is well established that a mere breach of contract, without more, does not violate Chapter 93A. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 103 (1979). Nonetheless, conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party will constitute an unfair act or practice for purposes of the statute. Wang Labs, Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986); Anthony’s Pier Four, Inc. v. HBC Assocs., supra at 474; Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992). Thus, where one party to an agreement employs a breach of contract as a lever to obtain an unfair advantage over the other, the breach “has an extortionate quality that gives it the rancid flavor of unfairness.” Atkinson v. Rosenthal, supra at 226. See also Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 814 n.3, 825 (1982) (commercial bribery or commercial extortion, if proved, constitutes violation of c. 93A, §11); Frank J. Linhares Co. v. Reliance Ins. Co., 4 Mass.App.Ct. 617, 621 (1976) (extortion or similar oppression violates c. 93A, §11).
For example, where one party to a contract withheld money legally owed under that contract in order to force the other party to do what otherwise it could not be legally required to do, such conduct constituted an unfair business practice under c. 93A, §11. Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985). Further, where a landlord’s agent demanded $50,000 of the sale price of the tenant’s business for himself as a condition to giving his consent to assigning the lease, a demand facially improper under the lease, such conduct easily attained the level of rascality giving rise to a violation of c. 93A, §11. Piccicuto v. Dwyer, 32 Mass.App.Ct. 137, 138-39 (1992). See also Anthony’s Pier Four, Inc. v. HBC Assocs., supra at 475 (holding that the defendant’s use of a pretext to coerce plaintiff into paying more than the parties’ contract required violates c. 93A, §11).
Finally, it is clear that a breach of the implied covenant of good faith and fair dealing between parties to a contract may constitute an unfair or deceptive act for the purposes of chapter 93A. Anthony’s Pier Four, Inc. v. HBC Assocs., supra at 476; Mass. Employers Ins. v. Propac-Mass. Inc., 420 Mass. 39, 43 (1995).
In the present case, it is undisputed that Massachusetts Electric never billed the Trust for the cost of providing electric service to the four common parking lot lights and further, that the Trust never made any expenditure for such service. Given that the Trust suffered no damage from Dunkin’s nonpayment of the electricity charges for the period between January 1, 1983 and December 31, 1992, the only purpose behind the Trust’s demand that Dunkin’ pay $37,149.49 for the past cost of operating the lights was to extract a windfall for its own benefit. Thus, this Court concludes that the Trust’s demand that Dunkin’ pay the past electric charges, a demand facially improper under the Lease, and its corresponding threat to consider Dunkin’ in default of the Lease if Dunkin’ did not comply, constitutes the type of commercial extortion between parties to a contract that violates c. 93A, §11.
Chapter 93A §11 authorizes the court to award up to three, but not less than two, times the amount of the plaintiffs actual damages if the defendant’s use of an unfair act or practice was a willful or knowing violation of Section 2 of the statute. G.L.c. 93A, §11 (1994). One party’s knowing use of a pretext to coerce the other party into paying more than their contract requires establishes wilfulness as a matter of law. Anthony’s Pier Four, Inc. v. HBC Assocs., supra at 475. Thus, this Court concludes that the Trust committed a wilful violation of 93A, entitling Dunkin’ to have its actual damages doubled.
Actual damages awarded under chapter 93A cannot be duplicative of the damages awarded on an underlying common law claim such as contract. Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 235 (1984). Hence, the $37,149.49 returned to Dunkin’ under the Lease cannot be included in its 93A actual damages. In cases where the only damages under chapter 93A amount to lost interest on money wrongfully withheld, the plaintiffs actual or single damages usually consist of the amount of interest which could have been earned. Bertassi v. Allstate Ins. Co., supra at 372-374; Greelish v. Drew, 35 Mass.App.Ct. 541, 545 (1993). In the present case, Dunkin’ clearly lost the use of the $37,149.49 paid to the Trust under duress in October of 1993. However, the court cannot award the same interest twice, once on the underlying contract claim and again on a 93A claim. Bertassi v. Allstate Ins. Co., supra at 373.[6] Thus, because the only injury suffered by Dunkin’ as a result of the Trust’s unfair practice is the loss of the use of funds, this Court will withhold interest on the underlying claim and instead award interest as actual damages under 93A, which may then be doubled or trebled for a knowing violation without being duplicative of the underlying award. See Bertassi v. Allstate Ins. Co., supra at 373; Schwartz v. Rose, 418 Mass. 41, 48 (1994). Accordingly, interest on the $37,149.49, at the rate of twelve per cent per annum,[7] will be calculated from the date of payment of that amount to the Trust until the entry of judgment, and the resulting sum will be doubled as Dunkin’s 93A damages. See Bertassi v. Allstate Ins. Co., supra at 373. Finally, having established a violation of Chapter 93A, §2, Dunkin’ is entitled as a matter of law to an award of reasonable attorneys fees and costs. G.L.c. 93A, §11 (1994).
*350 ORDER
Based on the foregoing, it is hereby ORDERED that a declaration enter declaring that under the terms of the 9/19/67 Lease between the parties, the Mighty Mac Realty Trust as landlord is not entitled to receive from Dunkin’ Donuts of Mass., Inc. as tenant the cost of operating the four common area parking lot lights depicted in Exhibit B to the Lease for the period January 1, 1983 through December 31, 1992.
Therefore, it is ORDERED that judgment shall enter for plaintiff Dunkin’ Donuts of Mass., Inc. in the amount of thirty-seven thousand, one hundred and forty-nine dollars and forty-six cents ($37,149.46) against defendants Mighty Mac Realty Trust, and Mac Stewart Bell and Annie Bell, as they are the Trustees of the Mighty Mac Realty Trust.
It is further ORDERED that pursuant to G.L.c. 93A, §11, the Clerk shall compute interest on the sum of $37,149.46, at a rate of twelve per cent (12%) per annum, for the period beginning 10/5/93 and ending on the date that this judgment is entered. The Clerk shall then double the amount of interest calculated and enter judgment for plaintiff Dunkin’ Donuts of Mass., Inc. in that amount against defendants Mighiy Mac Really Trust, and Mac Stewart Bell and Annie Bell, as they are the Trustees of the Mighty Mac Realty Trust.
In addition, it is ORDERED that pursuant to G.L.c. 93A, § 11, plaintiff Dunkin’ Donuts of Mass., Inc. submit to this Court, within thirty (30) days of the entry of judgment, affidavits and records documenting the reasonable costs and attorneys fees alleged to have been incurred in connection with this action.

This figure is comprised of $14,235, the estimated cost of the electricity consumed by the four lights over the ten-year period from January 1, 1983 through December 31, 1992, together with $22,914.46 in interest compounded each year at a rate of eighteen percent.

Thus, although Dunkin’ appears to have received a windfall by virtue of the inadvertent wiring of the four parking lot lights into its co-tenant’s meter, said windfall came at the expense of A&P, not at the expense of the Trust as landlord. Any cause of action against Dunkin’ for reimbursement of past electricity charges therefore belongs to A&P rather than to the Trust. Compare G.E. Lothrop Theatres v. Edison Elec. Illuminating Co. of Boston, 290 Mass. 189, 192-195 (1935) (holding that where tenants’ use of electricity was sub-metered, but the electric company inadvertently wired all submeters into the landlord’s meter, so that the landlord paid duplicative charges for electricity used and already paid for by its subtenants, the landlord could sue the electric company for money had and received).

This Court notes that in the present case, it is clear that neither the Lease nor the parties’ past conduct contemplates a rent inclusion arrangement where the tenant pays for electric current by paying a higher net rent unaffected by the extent of his use. See Boston Real Estate Bd. v. Department of Pub. Util., 334 Mass. 477, 481 (1953).

Dunkin’ further contends that the Trust’s demand for payment of past electricity charges for the parking lot lights which had already been paid by A&P constitutes the resale of electricity at a profit in violation of the terms of the tariff filed by Massachusetts Electric Company with the Department of Public Utilities. Because this Court has already resolved the dispute between the parties based on the terms of the Lease, it need not reach this issue.

Thus, ordinarily, prejudgment interest should not be included in the amount to be multiplied under chapter 93A. McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 716-18 (1990).

Chapter 231 Section 6C provides a prejudgment interest rate of twelve per cent per annum in actions based on contractual obligations. G.L.c. 231, §6C (1994). This court finds that this is a fair rate of interest for the purposes of calculating damages under Chapter 93A.