# United States Court of Appeals
## For the First Circuit

Nos. 01-1156
     01-1158

DISOLA DEVELOPMENT, LLC,

Plaintiff, Appellee/Cross-Appellant,

v.

JOSEPH C. MANCUSO and ROSARIO URDI,

Defendants, Appellants/Cross-Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Selya, Circuit Judge,
Bownes, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

Gerald A. Phelps and Sumner D. Goldberg, with whom Bruce L. Watson was on brief, for defendants.

Robert S. Wolfe, with whom Wolfe Associates, P.C. was on brief, for plaintiffs.

May 13, 2002

**BOWNES**, **Senior Circuit Judge**.  In this action, defendants-appellants Joseph Mancuso and Rosario Urdi appeal from an award of prejudgment interest to the plaintiff-appellee Disola Development, LLC.  The district court calculated interest on the jury's award of damages, $7,123.00, as well as on an additional sum of $130,366.89, which represented a fund deposited in a contested bank account.  We reverse the district court's award of prejudgment interest on the latter amount.

## I.  BACKGROUND

Disola was a limited liability company.  The original member-owners were Urdi, Mancuso, and Paul Kinchla.  All three had signed personal guarantees to a bank that had loaned the company the money for its operating capital.  After a time, Urdi and Mancuso decided that they wanted to get out of their personal guarantees, and the three principals agreed to amend the redemption provision of the original agreement.  On August 26, 1997, Disola paid Mancuso $360,000.00 and Urdi $471,000.00 for their interest in the property.  In addition, the parties agreed that Mancuso and Urdi were entitled to their pro rata share of the profits Disola had earned prior to the redemption payments.  Disola calculated that Mancuso and Urdi's share of the profits was approximately $63,430.00.  Urdi and Mancuso disagreed.

When the redemption occurred, Urdi, who had been president of Disola from its inception, was a signatory on bank

accounts held by Disola at the Meeting House Cooperative Bank containing $468,000.00. Urdi made a series of withdrawals totaling approximately $320,000.00, which he shared with Mancuso. These withdrawals precipitated this lawsuit.

Disola's complaint set forth counts for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I); conversion and breach of fiduciary duty under common law (Count II); violation of Mass. Gen. Laws ch. 156C, § 35, which regulates limited liability companies (Count III); and violation of Mass Gen. Laws ch. 93A (Count IV). Disola requested restitution as well as prejudgment interest on all counts.

Approximately three months after suit was brought, Mancuso and Urdi voluntarily returned $118,645.36 to Disola.

After a six-day trial, the case went to the jury. With the consent of counsel, the judge submitted special questions to the jury. The jury found in favor of the defendants as to Count I, and in favor of the plaintiff on Counts II and III.[1]

As to damages, the jury was asked:

Q.3. What amount of money will reasonably compensate Disola for any money taken, frozen and/or distributed in violation of the amended agreement?

The jury's answer to this question was $7,123.00.

---

[1]The court later found in favor of the defendants on Count IV.

During deliberations, the jury submitted a written question to the court:

> Can we answer Question 3 as X amount taken or distributed plus all of the money in the frozen accounts?

The court stated: "Give me one total figure as asked for in Question 3.  That's all I'm going to say."

After the jury returned its verdict, the district court entered the following Order of Judgment:

> Judgment shall be entered for the plaintiff Disola Development, LLC and against defendants Joseph Mancuso and Rosario Urdi in the sum of **SEVEN THOUSAND ONE HUNDRED TWENTY-THREE DOLLARS ($7,123.00)** with interest thereon at the rate of twelve percent (12%) from December 16, 1997 as provided by state law. Plaintiff is also awarded its costs of action, amounting to **FOUR THOUSAND FIVE HUNDRED THIRTY-NINE DOLLARS AND SEVENTY CENTS ($4,539.70).**
>
> The Court further orders that defendants Joseph Mancuso and Rosario Urdi shall take all necessary actions to give plaintiff Disola Development, LLC exclusive control over **ONE HUNDRED THIRTY THOUSAND THREE HUNDRED SIXTY-SIX DOLLARS AND EIGHTY-NINE CENTS ($130,366.89)** on deposit at Meetinghouse Co-operative Bank in Account No. 01-80-8023139. Because defendants wrongfully withheld or froze the monies in that account, interest shall be paid thereon at the rate of twelve percent (12%) from December 16, 1997 as provided by state law.  Because the account earned interest in the amount of $3,916.28 since December 16, 1997, that interest shall be deducted from the amount of interest calculated on the account at the twelve percent rate.

-4-

On December 21, 2000, Urdi and Mancuso filed a Motion to Alter Judgment, in which they requested removal of the award of interest on the $130,366.89 held in the frozen bank account. On December 30, 2000, the court denied the motion, stating that "defendants wrongfully withheld the monies in that account in breach of contract, the operating agreement, and their fiduciary duty."

## II. DISCUSSION

Mancuso and Urdi assert that the district court erred in awarding interest on the $130,366.89 in the frozen bank account. They contend that under Massachusetts law, interest may only be calculated on damages, which the jury assessed at $7,123.00. Whether the district court had the authority to award interest on this sum is a question of law. Accordingly, our review is de novo. Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 22 (1st Cir. 2001).

Massachusetts statutory law provides for prejudgment interest on damages in tort and contract actions. Mass. Gen. Laws ch. 231, § 6B provides:

> In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon at the rate

> of twelve per cent per annum from the date of
> commencement of the action . . ..

(Emphasis added.)  Section 6C similarly refers to interest added "to the amount of damages" in contract actions.

The $130,366.89 in the frozen bank account cannot be considered damages such that chapter 231 would apply.  The special verdict form indicates that the jury designated the sum of $7,123.00, and only that sum, as damages.  Question No. 3 on the verdict form asked:

> What amount of money will reasonably
> compensate Disola [the Company] for any money
> taken, frozen and/or distributed in violation
> of the amended agreement?

This question clearly encompasses the money in the frozen bank account.  Hence, the jury's response to this question – $7,123.00 – represents the total amount of Disola's damages.  This conclusion is buttressed by the court's response to the jury's written question during deliberations, in which it directed the jury to provide "one total figure as asked for in Question 3."

Disola contends that even if the $130,366.89 was not damages, the district court still could award interest on this amount pursuant to its equitable powers.  In support of this argument, it points out that its prayer for relief included a request for restitution and "any such further relief as justice and equity may require."  Disola further notes that in the order of judgment, the court stated that it was imposing prejudgment

interest "as provided by state law." This state law, it maintains, could refer to a decision of the highest state court rather than to chapter 231. It cites Schwartz v. Rose, 418 Mass. 41, 47-48 (1994), as authority for the district court's equitable power to award interest on a non-damages sum.

We need not delve into the question of whether the district court had the equitable authority to award interest on a sum that was not included in the damages figure. Regardless of whether it possessed such authority, the record compels us to conclude that the court was not acting pursuant to its equitable jurisdiction. Rather, it awarded interest pursuant to the Massachusetts statutes governing interest on damages awards. It specifically cited those statutes, Mass. Gen. Laws ch. 231, §§ 6B and 6C, and awarded interest at the twelve per cent rate prescribed therein.

In light of our conclusion that the $130,366.89 in the frozen account was not damages and that the court was not purporting to exercise its equitable powers, we cannot allow the award of prejudgment interest on this amount to stand. Accordingly, we reverse the district court's order of judgment on this point.

Disola filed a cross-appeal on the ground that prejudgment interest should have been awarded on the sum of $118,635.36, which represents the amount that Mancuso and Urdi

voluntarily repaid on May 26, 1999. We disagree. Assuming without deciding that the district court had the equitable power to award interest on that sum, any such award would be within the court's discretion. Cf. Schwartz, 418 Mass. at 48 n.7. Nothing in the record suggests that failure to award such interest would constitute an abuse of discretion. Accordingly, we affirm the district court's decision not to award interest on the sum of $118,635.36.

## CONCLUSION

For the reasons set forth above, we **VACATE** the district court's decision to award Disola prejudgment interest at the rate of twelve per cent on the amount of $130,366.89. We **REMAND** the matter to the district court to amend the judgment to reflect that the money in the frozen account in the Meeting House Cooperative Bank, including any interest earned since December 16, 1997, be returned to the control of Disola.

As to Disola's cross-appeal, we **AFFIRM** the district court's decision not to award interest on the amount of $118,635.36.

Costs to defendant-appellants.