Agnes, A.J.
1. This is a civil action in which the plaintiff Joseph Mongeon (plaintiff) seeks to recover attorneys fees and costs following a juiy-waived trial. The trial related to the plaintiffs claim that his insurer, the defendant Arbella Mutual Insurance Company, violated the law, namely G.L.c. 93A and G.L.c. 176D, by refusing to pay him the limits of his automobile insurance policy in a timely manner.
2. While operating his motor vehicle on October 6, 2000, the plaintiff was struck and injured by the operator of another vehicle who turned out to be uninsured. The plaintiff had a policy of insurance with the defendant with policy limits of $100,000. The plaintiff filed suit in the Superior Court in May 2002. The complaint contained two counts, one for arbitration of the uninsured motorist claim and one for a violation of G.L.c. 93A and G.L.c. 176D. In November 2002, after commencement of this action but prior to any arbitration in the case, defendant Arbella offered and tendered the policy limits ($100,000) to the plaintiff. The plaintiff did not accept the tender of the policy limits. The parties were ordered to arbitration with respect to both Count I and Count II by this court (Murphy, J.). That order was subject to interlocutory appellate review under G.L.c. 231, §118 (para. 1) wherein a single justice of the Appeals Court (Kafker, J.) vacated the order compelling arbitration of Count II, but declined, on procedural grounds, to make any ruling with respect to the arbitration order relating to Count I.
3. Originally, this court ordered that the arbitrator’s award ($275,000) should be confirmed. See Mongeon v. Arbella Insurance Company, Worcester Superior Court (October 7, 2003) (Agnes, J.). Thereafter, relying on Murphy v. National Union Fire Insurance Company, 438 Mass. 529 (2003), where the Supreme Judicial Court reiterated the principle that a plaintiff is not entitled to a judgment as to uninsured coverage benefits in a motor vehicle tort action when the insurer has tendered the full policy limits prior to any arbitration proceeding, this court reconsidered its decision and ruled that plaintiff was not entitled to confirmation of an arbitration award where the insurer tenders the full policy limits prior to the arbitration. Mongeon v. Arbella Insurance Co., 17 Mass. L. Rptr. 124 (Mass.Super. 2003) (Agnes, J.). In such a case there is no dispute requiring arbitration, and thus no basis for the confirmation of an arbitrator’s award. As a result this court allowed the defendant’s motion under Mass.RCiv.P. 59(e) to amend the earlier judgment as to count one and to enter in its place a new judgment to the effect that the plaintiffs claim under Count I of the complaint is moot as a result of the offer and tender by the defendant of the $100,000 of uninsured motorist coverage prior to the date of the arbitration hearing, and, provided that the plaintiff has a reasonable opportunity to accept said tender or a new tender on equivalent terms, Count I of the complaint is dismissed.
*288 4. On April 20, 2004, this court filed written findings of fact and rulings of law on the claims in count 2 [17 Mass. L. Rptr. 631]. The court ruled that the plaintiff had established a violation of G.L.c. 93A, but for the reasons stated above, damages could not be predicated on the amount of the settlement of the underlying claim between the plaintiff and the defendants. Nonetheless, the court ruled that unjust delay subjects the claimant to many of the costs and frustrations that are encountered when litigation must be instituted and no settlement is reached. When an insurer wrongfully withholds funds from a claimant, .it is depriving that claimant of the use of those funds. “This is precisely the type of damage we have described as appropriately being subject to multiplication in an action . . . under c. 93A.” Clegg v. Butler, 424 Mass. 413, 419 (1997), quoting Schwartz v. Rose, 418 Mass. 41, 48 (1994). The court further ruled that since the insurer did not tender the $95,000 settlement offer until November 1, 2002, the delay that is the subject of multiple damages under G.L.c. 93A is approximately 21 months (January 21, 2001 to and including November 1, 2002). Thus, the base level of damages is the interest due to the plaintiff over that period of time. At the statutory rate of 12% per year, the base level of damages are $20,301.55. Based on other findings that the defendant acted wilfully and in bad faith in withholding a fair and equitable settlement offer for 21 months, the court ordered that the damages should be trebled in accordance with G.L.c. 93A, §9. The amount of the treble damages was $60,904.65. The order for judgment further provided that counsel for the plaintiff is invited to submit an affidavit relating to attorneys fees and costs and counsel for the defendant may respond in writing pursuant to Superior Court Rule 9A.
5. The plaintiffs motion seeks legal fees in the amount of $121,057.50 and costs in the amount of $18,404.72 for a total award of $139,462.22. The defendant filed a written opposition, in which it maintains that these fees and costs are excessive and urges the court to substantially reduce the proposed award.
6. An award of attorneys fees and costs is specifically provided for in G.L.c. 93A, §§9 & 11 which provide in part that if the court finds a violation of §2, “the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys fees and costs incurred in said action.” The parties acknowledge that this provision has been interpreted to provide judges with broad discretion to determine the size of the award. Linthicum v. Archambault, 379 Mass. 381, 390 (1979).
7. In connection with an award of costs for experts, the factors to be considered are time spent by the expert in testimony, the number of appearances, preparation time, the degree of learning and experience, as well as the assistance provided to the court. See Linthicum, supra, 379 Mass, at 390. In this case, for reasons set forth in the court’s findings and rulings of April 20, 2004, counsel for the plaintiff faced both factual and legal complexities and a defendant which mounted a strong opposition. The largest component of the expenses are for the services of three experts and the costs of mediation. It was understandable that plaintiff would engage the services of medical experts such as Dr. Synan and Dr. Cummings for medical reviews. In addition, expert witness Paul Amoruso who testified at trial was highly experienced, well prepared and articulate, and extremely helpful to the court’s resolution of the case. Mr. Amoruso demonstrated a vast knowledge of insurance industry claims adjustment practices which was the central issue in the case. It certainly was reasonable for the plaintiff to agree to mediation of the claim, an approach to dispute resolution that is encouraged by the Trial Court, and thus reasonable to request reimbursement for expenses relating to that alternative dispute resolution process. Having reviewed the detailed accounting of expenses submitted by the plaintiff, I find that they were reasonably necessary to incur and approve costs in the amount of $18,404.72.
8.With respect to the proposed award of attorneys fees, the court similarly enjoys broad discretion. In Linthicum, supra, 379 Mass. at 388-89, we are advised to consider seven specific factors in exercising this discretion: (1) the nature of the case and the issues presented, (2) the time and labor required, (3) the amount of damages involved, (4) the result obtained, (5) the experience, reputation and ability of the attorney, (6) the usual price charged for similar services in the same area, and (7) the amount of awards in similar cases. “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.” Berman v. Linnane, 434 Mass. 301, 303 (2001). However, a brief review of the pertinent factors is useful. In general, as noted above, the plaintiff faced both factual and legal complexities and a defendant which mounted a strong opposition in this case. It was a case that required far more time and energy on counsel’s part than would have been required simply to prepare for the trial that ultimately took place because of the arbitration and the uncertainty about the potential for a confirmation of the award or damages as a multiple of the settlement amount. Nevertheless, as plaintiffs motion points out (paragraph 2), he was required to master a voluminous record including over 6,000 pages of medical reports. Furthermore, counsel had to prepare for his own testimony as he was deposed by the defendant in the course of this litigation. This court also may rely on its knowledge of the conduct of the trial by counsel. Here, counsel performed skillfully and professionally. I take that into account in the exercise of my discretion. The ultimate damage award was not large. Counsel for the plaintiff is an experienced attorney who enjoys a good reputation. What is missing, however, from the calculus supplied by the *289 plaintiff is data regarding the usual fees charged by counsel in the same area or in similar cases. I am not prepared to take judicial notice that the hourly rates charged by plaintiffs counsel ($250.00) and his associate ($175.00) for the work performed in this case are within the range of rates charged in the greater Boston area during the times in question.
9. It is significant to note that in this case the plaintiffs proposed estimate of the attorneys fees that should be awarded is presented in the form of a bill that purports to account for all of the time expended by plaintiffs counsel, and not an estimate of what portion of the time expended should be compensated. To simply approve such a bill, even assuming as I do that it is entirely accurate, is not an appropriate method for exercising the court’s discretion because the “standard of reasonableness depends not on what an attorney usually charges but rather, on what his services were objectively worth.” Heller v. Silverbranch Construction, 376 Mass. 621, 631 (1978).
10. A further complication exists in this case because some of the work done by plaintiffs counsel was directed to his underlying claim based on the uninsured coverage in his policy that resulted in a settlement for the full limits of the policy ($100,000). The defendant maintains that just as the amount of that settlement is not a judgment that can be counted for purposes of multiple damages under G.L.c. 93A, so too the legal work performed by plaintiffs counsel to obtain that settlement, including their good faith but unnecessary efforts in arbitration, cannot be compensated by an award of attorneys fees. However, if the defendant had acted lawfully and tendered the policy limits at the point when liability in that amount was reasonably clear, the plaintiff would not have been required to expend the effort that he did expend. Thus, I find that the effort made by plaintiffs counsel after January 21, 2001 to and including November 2002 is inextricably linked to the G.L.c. 93A claim and should be counted for purposes of the fee award. See DiMarzo v. American Mutual Insurance Co., 389 Mass. 85, 106 (1983).
11. In Berman v. Linnane, 434 Mass. 301, 303 (2001), the Supreme Judicial Court approved of the use of the “lodestar” method of calculating attorneys fees in which an estimate is made of the appropriate number of hours that should have been expended and the appropriate hourly rate for the result that was accomplished. See Borne v. Haverhill Golf, 58 Mass.App.Ct. 306, 324 (2003) (“[T]he ‘lodestar’ approach . . . assesses factors such as complexfiy, the result obtained, and the experience, reputation, and ability of the lawyer”). Based on the material submitted by counsel, the court’s knowledge of the case, and a consideration of the legal principles discussed above, I determine that an award of $77,942.63 for attorneys fees is appropriate.
12.For the above reasons, attorneys fees and costs are awarded to the plaintiff and assessed against the defendant in the amount of $96,347.35.