ANN & HOPE, INC., & others[1] *vs.* JOSEPH MURATORE
& others.[2]

No. 95-P-992.

Suffolk. November 6, 1996. - February 19, 1997.

Present: WARNER, C.J., ARMSTRONG, & JACOBS, JJ.

*Practice, Civil,* Findings by judge. *Contract,* Rescission, Damages. *Fraud. Damages,* Consumer protection case. *Consumer Protection Act,* Damages.

In a civil action the judge's findings of fact were not shown to be clearly erroneous. [227-229]

In a fraud action, the judge properly ordered the remedy of rescission of the contract in question and correctly calculated the amount of rescission damages. [229-231]

In a civil action alleging fraud, conspiracy, conversion and violation of G. L. c. 93A, arising from a contractual relationship, the judge erred in doubling the awarded damages for a knowing and wilful violation of G. L. c. 93A, where the damages awarded were rescission damages, equitable in nature, which were not subject to multiplication under the statute; the matter was remanded for a determination whether the plaintiffs had demonstrated actual damages under G. L. c. 93A, separate and distinct from the net rescission damages. [231-234]

CIVIL ACTION commenced in the Superior Court Department on March 12, 1990.

The case was heard by *Margot Botsford,* J.

*Jonathon D. Friedmann* for the defendants.

*Rudolph F. Pierce* for the plaintiffs.

WARNER, C.J. This case presents a question regarding the appropriate basis for calculating damages under G. L. c. 93A,

[1] Ann & Hope of Rhode Island, Inc., Pharmacy Service Corporation, and Ann & Hope Marketplace, Inc.

[2] Carl Oshry, Albert Tate, Robert Paccia, Michael Nathan, Creative Realty, Inc., doing business as Warranty Assurance Company, J & R Consultants, Inc., doing business as Mutronics Marketing. Tanol Distributors, Inc., did not join in the appeal.

§ 11. Following a jury-waived trial in the Superior Court, a judge ordered rescission of a contract under which one of the defendants, Creative Realty, Inc., doing business as Warranty Assurance Company (WAC), was to provide extended warranty protection on major household appliances sold by Ann & Hope stores, variously owned and operated by the plaintiffs, Ann & Hope, Inc., and three related corporations (collectively referred to as Ann & Hope). The judge determined that Ann & Hope was entitled to rescind the contract due to the intentional misrepresentations of one of the defendants, Joseph Muratore, in inducing Ann & Hope to do business with WAC. In addition to allowing Ann & Hope to rescind the contract, the judge ordered WAC to return to Ann & Hope the $3,038,830 it had paid for warranty protection. In order to compensate WAC for the consideration it had provided under the contract, Ann & Hope was ordered to return 12,039 warranty cards still in its possession and to reimburse WAC for its printing costs plus an additional $26,452.40, the amount WAC had actually paid for warranty repairs. The net rescission damages awarded to Ann & Hope totalled $2,973,208. Having found that the defendants' conduct constituted a wilful violation of G. L. c. 93A, § 11, the judge doubled the award for a total of $5,946,416.[3]

On appeal, the defendants argue (1) that the judge's findings of fact concerning the discrepancy between the number of warranty cards actually printed and the number for which Ann & Hope was billed were clearly erroneous and must therefore be set aside; (2) that the judge erred in ordering rescission under these circumstances and in the alternative, that the net rescission damages were improperly calculated; and (3) that the judge improperly included the purchase price of the warranties in her calculation of damages pursuant to

---

[3]The judge also found that Ann & Hope was entitled to additional, nonduplicative damages regarding a scheme involving Nintendo products sold below wholesale (the Nintendo scam), and that the defendants' conduct in that scheme constituted a separate violation of c. 93A. The judge awarded Ann & Hope attorneys' fees and costs totalling $454,500, and concluded that, with the exception of the defendant, Tanol Distributors, Inc. (not a party to this appeal), the plaintiffs were entitled to disregard the corporate forms of the defendant corporations for purposes of satisfying the judgment. The defendants have not challenged the award with respect to the Nintendo scam, nor have they challenged the award of attorneys' fees and costs.

G. L. c. 93A, § 11. Because we conclude that the net rescission damages awarded to the plaintiffs were not properly subject to multiplication under G. L. c. 93A, § 11, we remand the case to the Superior Court for a determination whether Ann & Hope has established actual damages causally related to the defendants' unfair and deceptive conduct.[4] We affirm, however, all other aspects of the judgment.

We summarize the facts as found by the judge. Ann & Hope operates a group of retail discount department stores selling, among other items, home appliances, home electronic equipment, and video games. Prior to the commencement of this action, the defendant, Joseph Muratore, was employed as a senior buyer of major appliances for Ann & Hope, and the defendant, Carl Oshry, was an associate buyer.

Ann & Hope was in the practice of offering extended repair warranties to purchasers of appliances and electronic equipment. These warranties, which remained in effect after the manufacturer's warranty had expired, were provided on warranty cards given to the consumer. The cost of the warranty protection was either included in the purchase price of the appliance, or made available to the consumer at an additional cost.

Prior to 1986, Ann & Hope purchased warranty protection from two companies. The companies sold warranty cards directly to Ann & Hope, and subsequently performed any necessary repairs. In 1985, Ann & Hope became dissatisfied with the warranty services that were being provided. Accordingly, in late 1985, senior management assigned Muratore the task of seeking a new provider of warranty protection. Muratore initially suggested that Ann & Hope provide and service its own warranties, but this idea was rejected.

Muratore next suggested that Ann & Hope purchase warranty protection from WAC. Muratore represented that WAC

---

[4]The plaintiffs maintain that the judge found, as an alternative to rescission damages, that they had demonstrated actual damages of $1,237,670.19. In fact, although the judge indicated in her findings that "Ann & Hope [had] proved claims of fraud," she expressly declined to address the issue of monetary damages in light of the fact that rescission was the appropriate remedy. Regarding the claim of breach of fiduciary duty, however, the judge stated that "rescission is the appropriate remedy," and on the civil conspiracy claim, she indicated that the losses sustained as a result of the defendants' actions were "essentially the same as those which the rescissionary damages . . . will cover."

was an established, national company based in the midwest that was already providing warranty services to Lechmere Sales, one of Ann & Hope's major competitors. Based on Muratore's representations, Ann & Hope's senior management decided to purchase warranty protection from WAC and began doing so in February, 1986.

Contrary to Muratore's representations, WAC was not an established company. Rather, WAC was formed by Muratore, Oshry, and other of the defendants in response to Ann & Hope's desire to locate a new warranty company. Although WAC began doing business with Ann & Hope in February, 1986, it was not even incorporated until November of that year.

Under the contract, Ann & Hope was to purchase pre-printed warranty cards from WAC and sell them to consumers who purchased major appliances. When repairs became necessary, the consumer could take the appliance to an authorized repair company, and WAC would then pay that company directly. In many instances, however, the repair companies sent bills directly to Ann & Hope. Muratore or Oshry approved these bills for payment, but subsequently failed to follow established procedures to insure that Ann & Hope would be reimbursed for the cost of the repairs.[5] Accordingly, Ann & Hope paid approximately $144,000 directly to repair service vendors over the term of the contract. In contrast, WAC paid only $26,452.40.

In addition to the activities described above, WAC also billed Ann & Hope for warranty cards it never received. From February, 1986, until March, 1990, Ann & Hope paid WAC for 200,980 warranty cards. WAC purchased these cards from B & M Printing Company (B & M), its sole supplier of warranty cards. B & M printed a total of 164,889 cards for WAC. Accordingly, Ann & Hope paid WAC for 36,091 more warranty cards than it actually received.

---

[5]The usual procedure followed by Ann & Hope in a situation such as this, where Ann & Hope is charged for goods or services that are actually owed by a vendor, is to "charge back" or credit the expense against invoices submitted by the vendor. Accordingly, in this case Muratore or Oshry should have notified the accounting department that the costs of repairs paid directly by Ann & Hope were to be "charged back" against WAC's outstanding invoices.

Ann & Hope filed this action in March, 1990, seeking equitable relief and monetary damages against the defendants on claims of fraud, conspiracy, conversion, and violations of G. L. c. 93A. WAC subsequently refused to honor its outstanding warranties, instead advising consumers to contact Ann & Hope directly. Accordingly, Ann & Hope assumed responsibility for providing protection under any unexpired warranties.[6]

1. *Validity of trial judge's findings of fact.* The defendants challenge the judge's findings (1) that B & M was WAC's sole supplier of warranty cards, and (2) that Ann & Hope paid WAC for 36,091 warranty cards it never received. These findings form the basis of the judge's conclusion that WAC fraudulently overbilled Ann & Hope for warranty cards it never received. The defendants maintain that the findings are totally unsupported by the evidence adduced at trial and must therefore be set aside.

On appeal, we may not set aside findings of fact "unless clearly erroneous, and [we must give] due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses." Mass.R.Civ.P. 52(a), 365 Mass. 730, 816 (1974). A finding of fact is clearly erroneous only if on the entire evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). Our review of the record in this case leaves us with no such conviction.

The defendants challenge the judge's finding that B & M Printing was WAC's sole supplier of warranty cards. Indeed, there is no dispute that B & M supplied WAC with 164,889 warranty cards or that Ann & Hope paid WAC for 200,980 cards; 36,091 more cards than WAC received from B & M. The defendants maintain, however, that the testimony of defendants Muratore and Oshry, combined with that of Terra Yannone, WAC's sole office employee and Marguerite Girard, one of B & M's principals, considered in light of the

---

[6]As of July 30, 1995, Ann & Hope had incurred expenses of over $495,000 under existing WAC warranties, and faces continuing liability with respect to future claims. The warranties' terms last between one and ten years.

physical appearance of the cards themselves, warranted a finding that B & M was not WAC's sole supplier, but rather, that a person identified only as "Roger the Printer" actually provided WAC with 50,000 additional cards. The defendants further claim that most of "Roger's" cards were sold to Ann & Hope, accounting for the discrepancy between the number of cards printed by B & M and the number for which Ann & Hope paid. They argue that the judge's finding to the contrary was clearly erroneous and must therefore be set aside. We disagree.

Our review of the record reveals that neither Yannone nor Girard mentioned "Roger the Printer," or stated that B & M was not WAC's sole supplier of warranty cards. Girard merely stated that WAC reduced the number of orders placed with B & M in mid-1989, but provided no insight into whether WAC subsequently purchased additional cards from "Roger the Printer" or from any other source. Yannone stated that at some point in time, the packaging of the warranty cards changed. She also stated, however, that the appearance of the cards remained the same.[7]

Defendants Muratore and Oshry provided the only direct testimony regarding the existence of "Roger." Indeed, both men claimed to have met "Roger" casually in a bar, hired him to print 50,000 warranty cards, and paid him in cash, all without keeping any record of the transaction or even obtaining his last name, telephone number, or business address. Neither Muratore nor Oshry presented any documentary evidence to support their claims. In light of the inherent credibility problems of both defendants and the lack of evidentiary support for their claims, we think the judge was justified in discrediting their testimony.[8] See *Gallagher* v. *Taylor*, 26 Mass. App. Ct. 876, 881 (1989). Accordingly, we conclude that the finding that B & M was WAC's sole source

_____

[7] Our examination of copies of the warranty cards included in the record is inconclusive on this issue.

[8] The judge found: "It is not probable, and in my view not reasonable to believe, that two business persons as savvy as Muratore and Oshry would enter into a contract . . . with a man whose full name, address, background, history, etc. were totally unknown to them; or that thereafter they would continue not to seek out any identifying information about [him], even though . . . his prices were much more favorable than B & M Printing's and the quality of the work was good."

of warranty cards was firmly supported by direct evidence and the reasonable inferences drawn therefrom. See *ibid.*

As an alternative explanation for the discrepancy between the number of warranty cards printed and paid for, the defendants maintain that the evidence adduced at trial established that a procedure known as "stock-balancing," whereby Ann & Hope exchanged with WAC surplus warranty cards of one type for cards of another type, made it appear as though Ann & Hope was billed for more cards than it received, even though this was not actually the case.

The defendants point to the testimony of one Ann & Hope employee and to the testimony of Yannone, both of whom testified to occasional stock balancing, in support of their claim. Neither witness, however, testified that stock-balancing occurred with enough frequency to account for a 36,091 card discrepancy. While defendant Oshry did describe widespread stock-balancing sufficient to explain such a large discrepancy, he was unable to provide any records to support his testimony and actually stated that no such records existed. Accordingly, the judge's failure to credit Oshry's version of the facts was not erroneous.

2. *Rescission damages.* The defendants next challenge the judge's calculation of Ann & Hope's net rescission damages. Here, the judge determined that rescission was the appropriate remedy due to the difficulty of calculating monetary damages and the practical impossibility of evaluating the parties' continued performance under the contract.[9] For purposes of calculating the net rescission damages due Ann & Hope, WAC's costs for printing the warranty cards plus the amount it paid for repairs under outstanding warranties were deducted from the amount Ann & Hope originally paid for warranty protection. Moreover, Ann & Hope was ordered to return to WAC the 12,039 warranty cards still in its possession. The net value of Ann & Hope's rescission award was $2,973,208.

The defendants argue that the remedy of rescission was improper in light of the fact that, because many of the warranty cards had already been sold, Ann & Hope was unable

[9]The judge stated that ". . . rescission rather than legal damages seems fitting [because] it would be essentially impossible properly to quantify [Ann & Hope's] damages. In particular, a significant component of damages relates to the repair expenses Ann & Hope has been and will be responsible for in connection with goods sold under warranty."

to return to WAC all it received under the contract. The defendants also maintain that the calculation of rescission damages was erroneous in any event, because the judge based the award on the full purchase price of all the warranties initially purchased from WAC, even though a significant number of those warranties had already expired by the date of trial. They claim that Ann & Hope was unjustly enriched by the award because it had already recouped most of its initial costs by the time of trial, either through its initial markup on warranties sold to consumers or the expiration of warranties on which no claims were ever submitted.

Rescission is an equitable remedy, and, whenever possible, the result should be to return the parties to the status quo ante. *Schwartz* v. *Rose*, 418 Mass. 41, 47 (1994). Accordingly, a plaintiff seeking rescission of a contract must generally "restore or offer to restore all that he received under [the contract]." *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 266 (1957). See *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 517 (1945). When complete restoration is impossible, however, the court may order "whatever conditions . . . justice and equity may require," *J.C. Penney Co.* v. *Schulte Real Estate Co.*, 292 Mass. 42, 45 (1935), so long as the defendant's rights are protected. *Bellefeuille* v. *Medeiros, supra* at 266, citing *Thomas* v. *Beals*, 154 Mass. 51, 55 (1891). For instance, the value of the property not restored may be considered in determining the plaintiffs' damages. Nolan & Sartorio, Equitable Remedies § 403, at 546 n.11 (2d ed. 1993). *Bellefeuille* v. *Medeiros, supra* at 266.

In this case, the fact that Ann & Hope was unable to return all that it received under the contract does not preclude equitable relief. See *J.C. Penney Co.* v. *Schulte Real Estate Co.*, 292 Mass. at 45; *Bellefeuille* v. *Medeiros*, 335 Mass. at 266. Moreover, the defendants' rights were adequately protected by the fact that Ann & Hope's right to rescind the contract was contingent upon satisfaction of the careful conditions imposed by the judge, i.e., the return of the unused cards and reimbursement for all WAC's expenses incurred in its performance of the contract. Indeed, we think that the award fashioned by the judge was both equitable and proper in that it returned to each party the consideration it provided under the contract to the greatest extent possible, while completely protecting the defendants' rights. The defendants' argument

to the contrary fails to take into account the fact that the judge could properly consider that any profit made by Ann & Hope as a result of its initial "mark up" on the warranty cards could be more than offset by Ann & Hope's ongoing liability under the outstanding warranties.[10]

3. *Calculation of damages pursuant to G. L. c. 93A.* We turn now to the final question presented by this appeal: when a contract is ordered rescinded due to a wilful and knowing violation of c. 93A and net rescission damages are awarded, are those damages subject to multiplication under the statute?

The judge found that the defendants' actions, in addition to warranting rescission of the contract, constituted violations of G. L. c. 93A. She further concluded that Ann & Hope was entitled to recover the same amount in actual damages under c. 93A as it would otherwise have received as rescission damages ($2,973,208), and doubled the award due to the wilful nature of the defendants' conduct, for a total award of $5,946,416. See G. L. c. 93A, § 11.

The defendants do not deny that their conduct constituted a knowing and wilful violation of G. L. c. 93A. Instead, they challenge the judge's calculation of statutory damages.[11] They maintain that because the rescission damages awarded to Ann & Hope were in the nature of equitable relief rather than

---

[10]Because we conclude that Ann & Hope's net rescission damages were properly calculated, we need not address the defendants' argument regarding the admissibility of "Exhibit C," a chart that, although offered for a different purpose at trial, they now claim should have been admitted to aid in the proper calculation of damages. We note, however, that it is "the duty of counsel to bring to the judge's attention with sufficient clarity the grounds upon which the admission of [] evidence . . . [is] sought." *George* v. *Jordan Marsh Co.*, 2 Mass. App. Ct. 848, 849 (1974), quoting from *H.H. Hawkins & Sons Co.* v. *Robie*, 338 Mass. 61, 66 (1958).

[11]The plaintiffs maintain that the defendants' failure to challenge the basis of calculating damages under G. L. c. 93A at trial and in their subsequent motion for a new trial precludes them from doing so here. At trial, the defendants staunchly maintained that they were not liable to the plaintiffs under any of the theories asserted in the complaint, and their proposed findings of fact and rulings of law were based upon that contention. Accordingly, their failure to submit a "proposed calculation of damages" does not preclude them from challenging the award here. Moreover, in support of their motion for a new trial, the defendants requested a hearing with respect to c. 93A damages, "to more properly reflect actual damages suffered by Ann & Hope." We think this admittedly cursory reference to the proper measure of damages under G. L. c. 93A was sufficient to preserve the issue for review.

legal damages, they did not constitute actual damages and were therefore not subject to multiplication under c. 93A.[12] We agree.

In determining that Ann & Hope's actual damages under c. 93A were equal to its net rescission damages, the judge relied on language from section 11, which provides that "the amount of actual damages . . . shall be the amount of the judgment on all claims arising out of the same and underlying transaction . . . ."[13] G. L. c. 93A, § 11, as inserted by St. 1989, c. 580, § 2. She then doubled the award due to the defendants' wilful conduct. See *ibid.* In addition to the language relied upon by the judge, however, the statute further provides:

> "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of . . . an unfair method of competition or an unfair or deceptive act or practice . . . may . . . bring an action . . . for damages and such equitable relief . . . as the court deems to be necessary and proper.
>
> " . . .
>
> "If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the . . . act or practice was a wilful or knowing violation. . . . In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper."

G. L. c. 93A, § 11, as inserted by St. 1972, c. 614, § 2.

---

[12]The plaintiffs maintain that because the net rescission damages awarded to Ann & Hope are identical to the actual damages that would have been awarded using a restitution contract theory of damages, the defendants' argument must fail. Our consideration of the entire text of the judge's thorough decision, however, leads us to conclude that the basis for Ann & Hope's recovery was, indeed, rescission rather than restitution. The fact that the same damages may have resulted under a different theory of recovery does not negate the equitable nature of the remedy granted here.

[13]In order to avoid duplicative damages, the judge awarded damages only under c. 93A. See generally *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 235 (1984).

"The statute clearly distinguishes between actual damages, which are subject to multiplication, and equitable relief." *Schwartz* v. *Rose*, 418 Mass. at 47. This distinction has been interpreted as precluding the use of rescission damages, which are equitable in nature, as the basis for calculating multiple damages under c. 93A. *Ibid.*[14] In *Schwartz* v. *Rose, supra*, the Supreme Judicial Court affirmed a Superior Court judge's refusal to include the purchase price of a parcel of real estate in the amount of damages subject to multiplication under c. 93A, where the transaction was ordered rescinded. *Schwartz* v. *Rose, supra* at 42. The court reasoned that because return of the purchase price of the land was necessary to secure the rescission, it was not part of the "amount of the judgment" constituting actual damages and therefore not subject to multiplication under the statute. *Id.* at 47. The court further explained that, "[w]hen rescission is justified by a violation of c. 93A, the actual damages subject to multiplication consist of the losses suffered by the plaintiff because of the interruption in the status quo."[15] *Id.* at 47-48.

Here, because the net rescission damages awarded to Ann & Hope were a necessary component of the equitable remedy of rescission, they did not constitute actual damages for purposes of c. 93A. Accordingly, they were not properly subject to multiplication. The fact that Ann & Hope's inability to return to WAC all that it received under the contract required calculation of a net damage award does not alter the equitable nature of the remedy granted. See *Schwartz* v. *Rose, supra* at 47 ("It is beyond question that rescission is an equitable remedy"). See also *J.C. Penney Co.* v. *Schulte Real Estate Co.*, 292 Mass. at 45.

The proper measure of damages with respect to the c. 93A violation was the loss, if any, "suffered by the plaintiff[s] because of the interruption in the status quo." *Schwartz* v. *Rose*, 418 Mass. at 47-48. In order to be compensable, these damages must be separate and distinct from any losses for which Ann & Hope will be reimbursed as a result of the rescission. See *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass.

---

[14]Although *Schwartz* v. *Rose, supra*, involved the interpretation of G. L. c. 93A, § 9(3), the relevant language is identical to that considered here.

[15]In *Schwartz* v. *Rose*, the plaintiff's actual damages consisted of his out-of-pocket expenses and the loss of the use of the purchase money between the closing and the order of rescission. 418 Mass. at 48.

228, 235 (1984) (duplicative damages impermissible where the same acts cause the same injury under more than one theory of recovery). See also *Schwartz* v. *Rose, supra* at 48 (actual damages awarded under c. 93A in addition to rescission of transaction involving the sale of land); *Multi Technology, Inc.* v. *Mitchell Mgmt. Sys., Inc.*, 25 Mass. App. Ct. 333, 337-338 (1988) (separate awards for breach of contract and violations of c. 93A deemed permissible).

Under these circumstances, there must be a remand to the Superior Court for a determination whether the plaintiffs have demonstrated actual damages under c. 93A that are separate and distinct from their net rescission damages. If the court determines that such damages have been established and that the defendants' conduct was wilful or knowing, the amount of damages may be multiplied pursuant to the statute and awarded to the plaintiffs in addition to the rescission remedy to which they are otherwise entitled.

The judgment on the warranty claim is affirmed on all counts as to liability. The damage award on the warranty claim is vacated, and a new award shall enter in the sum of $2,973,208. The matter is remanded to the Superior Court for the purpose of recalculating damages on the G. L. c. 93A count of the warranty claim only, all in accordance with the opinion of this court. All other aspects of the judgment are affirmed.

*So ordered.*