Williams, RJ.
After the plaintiff, Seth T. McNamara (“McNamara”), had purchased a used pickup truck from the defendant, Michael J. Corte-Real (“Corte-Real”), he sought to rescind the sale transaction. Following a jury-waived trial, the judge found in favor of Corte-Real on the basis of McNamara’s failure to prove both that there had existed undisclosed defects in the truck that would have entitled him to rescind the sale, and that he had returned, or would be returning, the truck to Corte-Real. McNamara appealed, claiming it was error for the trial court not to have found that he was entitled to rescind the sale. Additionally, McNamara argued that the sale was invalid in any event because Corte-Real had not transferred title of the truck to him. We find no error, and dismiss the appeal.
Corte-Real bought a 1999 Ford F-250 pickup truck from one Maynard in March, 2005. Maynard transferred title to Corte-Real, but Corte-Real did not register the truck. In December, 2005, Corte-Real sold the truck to his close friend, McNamara. Although it was undisputed that both parties knew the truck needed certain repairs, there was disagreement at trial as to whether McNamara knew of the truck’s faulty brakes.
On December 6, 2005, the two signed an agreement for the purchase and sale of the truck at a price of $12,000.00. The two had agreed, however, that McNamara would pay only $10,000.00 for the truck McNamara borrowed $11,400.00 from a credit union and paid that sum to Corte-Real, who returned $1,400.00 to McNamara. The evidence permitted a finding that the latter sum was to be used either to register and insure the truck, or to effect certain repairs to the truck, including to its brakes.
When McNamara tried to register the truck, the registry of motor vehicles would not allow him to do so, reportedly because the title he had obtained from Corte-Real showed only the Maynard transaction and did not name Corte-Real as an owner. After Corte-Real had not, as he had promised, rectified that problem, McNamara went back to Maynard and obtained a new title, with which McNamara was satisfied, even though he did not try again to register the vehicle.
A few days after the purchase, McNamara had the truck towed to a repair facility (“Jim’s”). Whether McNamara told Jim’s principal, James Medeiros (“Medeiros”), that he knew of the brake problems and asked Medeiros to check the brakes is disputed. *216 Medeiros, in any event, told McNamara that the brakes were severely defective, and provided a repair estimate in excess of $3,000.00 for work required to render the truck operable and safe. McNamara and Corte-Real talked about splitting the repair costs, but reached no resolution. McNamara, purportedly, served a written notice of rescission pursuant to G.L.c. 90, §7Nl/4(8) on Corte-Real on January 5, 2006, seeking the return of his purchase money.[2] Receiving no such relief, he commenced this action.
The trial judge noted the parties’ friendship and found that McNamara had been familiar with the truck before he bought it, and that the sale was valid. He also found that Corte-Real had agreed to pay the cost of repairing the water pump and serpentine belt assembly, but once Jim’s determined that more work, at a cost in excess of $3,000.00, was needed, McNamara declined to proceed with the work, and did not retrieve the truck from Jim’s. The truck had been towed from Jim’s to Boss Towing, Inc. (“Boss Towing”), where it remained as of the time of the judgment. The trial judge correctly ruled that McNamara bore the burden of establishing the elements of rescission, Raymond Syndicate, Inc. v. American Radio & Research Corp., 263 Mass. 147, 155-156 (1928), by advancing proof of the existence of undisclosed defects in the truck at the time of sale, and of his return, or tender of return, of the truck to Corte-Real. The latter derives from the essence of the doctrine of rescission, which is to place the parties in the position they were in before their failed transaction. Bellefeuille v. Medeiros, 335 Mass. 262, 266 (1957). McNamara, the trial judge found, had proved neither requirement by a preponderance of the evidence, and so ordered judgment for Corte-Real.[3]
1. McNamara’s first argument — that the trial judge erred in failing to find that McNamara was entitled to statutory rescission — is predicated on his singular view *217 that the evidence conclusively established that Corte-Real never informed McNamara of the truck’s brake failure. Thus, if the record before us discloses evidence that could support a conclusion that Corte-Real had revealed the defective brakes to McNamara at the time of sale, the potential rescission remedy of G.L.c. 90, §7Nl/4(8) on which McNamara relies would be unavailable to him because there would be no “undisclosed defects” to trigger the operation of the statute.
Clearly, the parties’ level of knowledge about the defective brakes was a question of fact for the trial court. See, e.g., Commonwealth v. Casale, 381 Mass. 167, 173 (1980). Although the trial judge did not issue a lengthy, detailed recitation of all facts indicative of McNamara’s knowledge about the defective brakes, he expressly found that McNamara had failed to prove that the brake problem had not been disclosed to him. “[W]e do not review questions of fact found by the judge, where such findings are supported on any reasonable view of the evidence, including all rational inferences of which it was susceptible. So long as the judge’s account is plausible in light of the entire record, an appellate court should decline to reverse it.” Lily Transp. Corp., supra at 181, quoting Demoulas, supra at 510.
The judge’s view of the nature of the parties’ transaction is supported by the record. Contrary to McNamara’s argument that the brake failure had not been disclosed to him, the record reflects sufficient evidence that would have permitted the trial judge to conclude that McNamara essentially knew as much about the defective brakes as Corte-Real did. Specifically, there was evidence that Corte-Real had told McNamara, with whom he had been friends for some 22 years and with whom he “hung out every day,” about the “brakes problem.” Corte-Real testified, specifically, that he had sold the truck to McNamara with the understanding that it had problems with the water pump, serpentine belt, and brakes. Indeed, the presumed cost of repairing those defects was the reason Cone-Real returned $1,400.00 to McNamara of the $11,400.00 McNamara had borrowed to purchase the truck.[4] Because the record supports the trial judge’s view of the evidence that McNamara knew of the brake problem at the time of sale, his conclusion that McNamara had not proved entitlement to rescission on the basis of undisclosed defects was sound.
2. There was also no error in the trial judge’s determination that McNamara’s failure to return, or tender a return, of the truck to Cone-Real precluded a finding in his favor in this action.
Rescission is an equitable remedy, and, whenever possible, the result should be to return the parties to the status quo ante. Accordingly, a party seeking rescission of a contract must generally “restore or offer to restore all that he received under [the contract]” (citation omitted).
Ann & Hope, Inc. v. Muratore, 42 Mass. App. Ct. 223, 231 (1997), quoting Bellefeuille, *218 supra at 266. See also Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 288-289 (1993). This is not a case in which the properly in question could not be returned because it had been lost or destroyed. It was McNamara, not Corte-Real, who had the truck towed to Jim’s on December 9, 2005, three days after he purchased it. He was informed by Medeiros within a reasonable time thereafter of the high cost of the brake repairs, but took no steps then, or in the ensuing weeks, to remove the truck from Jim’s place of business. Nor did he take any action at or around the time of his notice of rescission[5] to secure the truck for its necessary return to Corte-Real. McNamara had, effectively, abandoned the truck at Jim’s, and did nothing to prevent its removal in early January, 2006 to Boss Towing, which, at the time of trial, held a mechanic’s lien for unpaid towing and storage charges. Contrary to McNamara’s mistaken contentions, Corte-Real was not required to demand a return of the vehicle, or to “retrieve” the truck from Jim’s or Boss Towing, or to pay the towing and storage charges for which McNamara was responsible and that would have been a prerequisite to obtaining possession of the vehicle. It was McNamara’s obligation to return the truck to Corte-Real to effect a rescission of the parties’ transaction. The trial judge properly found that he failed to do so.
3. McNamara’s final argument on this appeal is that the sale was void ab initio since Corte-Real, who had failed to title the truck in his own name when he bought it from Maynard, did not assign the title to McNamara pursuant to G.L.c. 90D, §§4(a), 15(a), (b), and (e). But McNamara testified at trial that Maynard obtained a new title for him that would have permitted him to register the truck. On appeal, however, McNamara has suggested that his own trial testimony on that issue was mistaken, and he has recited a litany of actions that would be required for him to secure a valid title to the truck. In other words, McNamara is asserting a position he assumed for the first time only after the trial was completed and that, obviously, was not presented to the trial judge. See Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 208 n.10 (2008), citing Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) (issue not raised or argued below may not be argued for first time on appeal). We decline to entertain such an issue now.
Judgment affirmed.
So ordered.

 That subsection provides, in pertinent part:
A private seller [of a used motor vehicle] shall clearly disclose to any prospective buyer, before the sale is completed, all defects the seller knows of which impair the used motor vehicle’s safety or substantially impair its use. Failure to so disclose known defects shall entitle the buyer, within thirty days after the sale, to rescind the sale and be entitled to return of all monies paid to the seller less a reasonable amount for use....

 Overarching the trial judge’s decision is his recognition of both the confusing nature of much of the evidence and his opinion that neither party’s testimony was particularly credible. Although it is not “forbidden territory,” the credibility of witnesses “is a preserve of the trial judge upon which an appellate court treads with great reluctance.” Lily Transp. Corp. v. Royal Inst. Servs., Inc., 64 Mass. App. Ct. 179, 189 (2005) (Laurence, J., concurring in part and dissenting in part), quoting Springgate v. School Comm. of Mattapoisett, 11 Mass. App. Ct. 304, 310 (1981). As McNamara’s counsel recognized in closing argument, “it’s a question of credibility and you’ve [trial court] got to decide. Did he disclose it or didn’t [he]?” ‘The judge’s advantage in weighing the testimony is particularly evident in a case involving conflicting testimony, one in which widely differing inferences could be drawn from the evidence, and the drawing of inferences cannot be separated from the evaluation of the testimony itself.... Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be clearly erroneous.” Id., quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).

 As noted, Medeiros testified that when McNamara had the truck towed to Jim’s, McNamara knew the truck needed brake work. McNamara told Medeiros there was a problem with the brakes and asked Medeiros check them, which task Medeiros noted on his invoice. It is unclear, however, from the judge’s memorandum of decision that he credited this aspect of Medeiros’ testimony.

 The notice prepared by McNamara’s attorney bears a typewritten date of January 3,2006. What purports to be a return of service by a process server named Richard J. Coletti (“Coletti”) does not set forth a date of service anywhere in the text of the return. A handwritten notation at the top of the return states: “N. Dartmouth. 1/5/6.” There is no indication that the notation was made by Coletti.