KENNETH D. MAY & another[1] *vs.* SunTrust Mortgage, Inc.

Suffolk. December 3, 2013. - April 14, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Consumer Credit Cost Disclosure Act. Limitations, Statute of. Statute,* Construction. *Mortgage,* Loan commitment. *Contract,* Rescission. *Practice, Civil,* Statute of limitations. *Words,* "Recoupment," "Rescission."

Discussion of provisions of the Massachusetts Consumer Credit Cost Disclosure Act, G. L. c. 140D, §§ 1-35, for the borrower's right to rescind a consumer credit transaction in which a security interest in the borrower's dwelling has been granted, subject to a four-year limitation, and for a consumer's right of recoupment. [758-761]

This court concluded that a borrower's right of recoupment under the Massachusetts Consumer Credit Cost Disclosure Act (act), G. L. c. 140D, §§ 1-35, in circumstances in which the borrower grants a mortgage in a consumer credit transaction, does not entitle the borrower to exercise the right of rescission after the expiration of the act's four-year limitation period on the right of rescission. [761-767]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States Bankruptcy Court for the District of Massachusetts.

*Kenneth D. Quat* for the plaintiffs.

*Nathalie K. Salomon* for the defendant.

*Jeremiah Battle,* of New Jersey, & *Stuart Rossman,* for National Consumer Law Center, amicus curiae, submitted a brief.

BOTSFORD, J. The Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA), G. L. c. 140D, §§ 1-35, governs the rights and duties of creditors and obligors (borrowers or consumers) engaged in consumer credit transactions. One type of consumer credit transaction to which the MCCCDA applies is the refinancing of a consumer's home where the consumer grants a mortgage to the creditor to secure the refinancing loan.

[1]Valerie Corbin-May.

Pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), a judge in the United States Bankruptcy Court for the District of Massachusetts[2] has certified the following question:

> "May an obligor [borrower] who grants a mortgage in a consumer credit transaction rescind the transaction under the Massachusetts Consumer Credit Cost Disclosure Act, [G. L. c.] 140D, § 1 et seq. (the 'MCCCDA'), defensively by way of common law recoupment after the expiration of the four year statute of limitations set forth in [§] 10 (f) of the MCCCDA?"

For the reasons we discuss hereafter, we answer no to the question.[3]

1. *Background.* The essential background facts are undisputed by the parties. On October 7, 2005, Kenneth May and Valerie Corbin-May, the plaintiffs, refinanced their home in Brockton in a mortgage loan transaction with Summit Mortgage (Summit), for $300,000. The mortgage later was assigned to and is held currently by the defendant here, SunTrust Mortgage, Inc. (Sun-Trust).[4] On January 28, 2010, the plaintiffs, facing foreclosure, filed a petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the District of Massachusetts. In response, SunTrust filed a proof of claim alleging that the plaintiffs owed $329,965.80, including $49,704.47 in arrears, on the mortgage note.[5] On June 4, 2010, the plaintiffs sent a letter to SunTrust notifying it of their election to rescind the loan transaction. When SunTrust took no action to terminate its security interest (e.g., by discharging the mortgage), on June 28, the plaintiffs filed an adversary proceeding against SunTrust in the pending Chapter 13 bankruptcy

[2]A United States Bankruptcy Court judge may certify a question under this rule. See *Boyle* v. *Weiss*, 461 Mass. 519, 519 n.1 (2012).

[3]We acknowledge the amicus brief filed by the National Consumer Law Center.

[4]The assignment of the mortgage to SunTrust Mortgage, Inc. (SunTrust), does not affect any rights that the plaintiffs may possess under the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA). See G. L. c. 140D, § 10 (i) (4).

[5]Nothing in the record indicates whether the mortgage note also was assigned to SunTrust along with the plaintiffs' mortgage, but for purposes of answering the question certified, we assume that it was.

case, seeking rescission of the loan transaction and damages.[6] The allegations of the plaintiffs' claim for rescission in count III of their adversary complaint may be summarized as follows: Summit, the original creditor, violated the mandatory notice provisions of § 10 (*a*) of the MCCCDA by presenting the plaintiffs with, and instructing them to postdate and sign, a "Statement of Non-Rescission"; because the notice provision did not comply with those mandatory notice provisions of the MCCCDA, the plaintiffs did not receive the clear and conspicuous disclosure of their right to cancel the transaction required by the MCCCDA; and under c. 140D, § 10 (*i*) (3), the plaintiffs may seek to rescind the transaction by way of recoupment as a complete or partial defense to SunTrust's claim to recover monies allegedly owed under the mortgage note.

On July 13, 2012, SunTrust moved for summary judgment, arguing that because the plaintiffs filed their adversary complaint more than four years after the mortgage loan transaction, their defensive rescission-by-way-of-recoupment claim is time barred by § 10 (*f*) of the MCCCDA. The plaintiffs have asserted in response that the time limits of the MCCCDA do not apply when rescission is claimed defensively by way of recoupment because § 10 (*i*) (3) of the MCCCDA allows for recoupment claims at any time. A judge in the Bankruptcy Court, noting conflicting interpretations of the MCCCDA in a number of Bankruptcy Court decisions and a lack of controlling Massachusetts precedent, reported the question set forth above.

2. *Statutory scheme.* The MCCCDA is modeled after the consumer protection provisions contained in the Federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq. (2012).[7] See O'Connell *vs.* Wells Fargo Bank, N.A., U.S. Bankruptcy

---

[6]The plaintiffs have twice amended their adversary complaint. The second amended complaint, dated March 22, 2011, is the operative pleading at this point. It contains four counts, but counts I and II have been dismissed. Count III set out a claim of entitlement to rescind the loan transaction by way of recoupment pursuant to the MCCCDA, and count IV claims that SunTrust's refusal to grant rescission is an unfair or deceptive act or practice in violation of G. L. c. 93A, § 2. In answering the reported question, we focus primarily on count III.

[7]The Federal Truth in Lending Act (TILA) and the MCCCDA are each implemented through administrative regulations. See 15 U.S.C. § 1604(a) (2012); 12 C.F.R. 226.01 et seq. (2013). See also G. L. c. 140D, § 3 (*a*); 209

Court, No. 11-10940-FJB, slip op. at 5 (D. Mass. July 6, 2012) (O'Connell). Both the MCCCDA and TILA were enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Fidler* v. *Central Coop. Bank,* 226 B.R. 734, 736 (Bankr. D. Mass. 1998), quoting 15 U.S.C. § 1601(a).

Although a consumer credit transaction in theory could be governed by both TILA and the MCCCDA, the board of governors of the Federal Reserve System has deemed certain types of Massachusetts consumer credit transactions exempt from TILA, including the one at issue here; as a consequence, such transactions are governed solely by the MCCCDA. See *DiVittorio* v. *HSBC Bank USA, NA,* 670 F.3d 273, 282 (1st Cir. 2012); *Laudani* v. *Tribeca Lending Corp.,* 401 B.R. 9, 25 n.13 (Bankr. D. Mass. 2009). Nevertheless, because of the close relationship between TILA and the MCCCDA, we interpret the MCCCDA mindful of TILA's presence and influence. See *Fidler, supra* at 736 ("Because TILA was the model on which [M]CCCDA was based, federal court decisions construing TILA are instructive in construing parallel provisions of [M]CCCDA"). See also O'Connell, *supra* at 5 ("Although the MCCCDA is the operative law in Massachusetts, its similarity to the TILA requires that the former be construed in accordance with the latter").

a. *The right to rescind.* Under the MCCCDA, as is true of TILA, see 15 U.S.C. § 1635, in any consumer credit transaction in which a security interest in the borrower's principal dwelling is granted, the borrower has an automatic right to rescind the transaction within three business days of the transaction's closing or within three business days of receiving the required rescission forms and other material disclosures from the creditor, whichever is later. G. L. c. 140D, § 10 (*a*).[8] Accord-

Code Mass. Regs. §§ 32.00 (2013); O'Connell *vs.* Wells Fargo Bank, N.A., U.S. Bankruptcy Court, No. 11-10940-FJB, slip op. at 5 (D. Mass. July 6, 2012) (O'Connell).

[8]General Laws c. 140D, § 10 (*a*), states in relevant part:

"Except as otherwise provided in this section, in the case of any consumer

ingly, if the creditor does not make the required disclosures or properly notify the borrower of his right to rescind at the time the transaction closes, the borrower remains entitled to seek rescission until three days after the creditor does so. This right, however, is subject to a limitation set out in § 10 (f), which provides that the extended period for exercise of the right of rescission completely ends after four years.[9],[10] But § 10 also contains a provision, § 10 (i) (3), that, notwithstanding the four-year limitation period in § 10 (f), preserves a consumer's "right of recoupment under the laws of the [C]ommonwealth."[11] As we discuss *infra*, we understand § 10 (i) (3) to be the focus of the Bankruptcy Court judge's reported question.

b. *The effects of rescission.* Section 10 (b) of the MCCCDA and its implementing regulations define the process and effect of rescission of a consumer credit transaction involving a security interest in the borrower's principal dwelling. See 209 Code

---

credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the [borrower] shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required by this chapter, whichever is later, by notifying the creditor, in accordance with regulations of the commissioner [of banks], of his intention to do so."

[9]General Laws c. 140D, § 10 (f), provides in relevant part:

"[A borrower's] right of rescission shall expire four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the [borrower] . . . [subject to exceptions not applicable here]."

[10]The four-year extended right of rescission in G. L. c. 140D, § 10 (f), differs from TILA which provides that a borrower's extended right of rescission "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). See *Beach* v. *Ocwen Fed. Bank*, 523 U.S. 410, 413 (1998).

[11]General Laws c. 140D, § 10 (i) (3), provides: "Nothing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the [C]ommonwealth."

Mass. Regs. § 32.23(4)(a)-(d) (2010). When a borrower rescinds such a transaction, the underlying security interest in the dwelling — the mortgage — becomes void and the borrower is no longer liable for finance charges. See G. L. c. 140D, § 10 (b); 209 Code Mass. Regs. § 32.23(4)(a). Within twenty days thereafter, the creditor is required to return any monies or property given in relation to the transaction and must also take any additional action necessary to terminate the mortgage. See G. L. c. 140D, § 10 (b); 209 Code Mass. Regs. § 32.23(4)(b). The borrower may retain the property until the creditor has performed these obligations, after which time the borrower "shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the [borrower] shall tender its reasonable value." G. L. c. 140D, § 10 (b). See 209 Code Mass. Regs. § 32.23(4)(c).

3. *Discussion.* We repeat the reported question:

> "May [a borrower] who grants a mortgage in a consumer credit transaction rescind the transaction under the [MCCCDA, G. L. c. 140D], defensively by way of common law recoupment after the expiration of the four year statute of limitations set forth in [c. 140D, § 10 (f)]?"

Although the Bankruptcy Court judge refers to the common law in framing it, we understand her question to pose an issue of statutory interpretation: does G. L. c. 140D, § 10 (i) (3), which provides that "[n]othing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth[,]" entitle the consumer to exercise the right of rescission set out in § 10 (a) after the four-year limitation period in § 10 (f) has expired, as a form of defensive recoupment against the amount the creditor claims to be owed?[12]

---

[12]As the Bankruptcy Court judge noted, this question has arisen in a number of bankruptcy cases, and has received different answers. On one side are *Fidler* v. *Central Coop. Bank*, 226 B.R. 734, 737 (Bankr. D. Mass. 1998), and its progeny, see, e.g., *Bettano* v. *Wells Fargo Bank, N.A.*, 440 B.R. 13, 15 (Bankr. D. Mass. 2010); *Maxwell* v. *Fairbanks Capital Corp.*, 281 B.R. 101, 124 (Bankr. D. Mass. 2002), which all concluded that a borrower's right to recoupment under § 10 (i) (3) includes the right to rescind the transaction beyond the expiration of the four-year statutory period. On the other side is O'Connell, *supra* at 8, which concluded that a borrower "cannot rescind a transaction by way of recoupment at all, and . . . may not do so by any

As is obvious, § 10 (*i*) (3) does not provide explicitly for rescission by way of recoupment, or include the word "rescission" at all.[13] Nor does § 10 (*i*) (3), or any other section of the MCCCDA, define the word "recoupment." Accordingly, the question we need to answer is whether, apart from § 10 (*i*) (3) and the MCCCDA, any "laws of the Commonwealth" pertaining to recoupment provide for or recognize rescission as a form of recoupment, at least where rescission is used defensively to meet an obligation due. The parties do not suggest, and we have not found, any Massachusetts statute that does so, or even touches on this issue. We turn, therefore, to the common law. See *Commonwealth* v. *Stokes*, 440 Mass. 741, 747 (2004), quoting *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984) ("Where the Legislature does not define a term, we presume that its intent is to incorporate the common law definition of the term, 'unless the intent to alter it is clearly expressed' ").

Both recoupment and rescission find their origins in the common law. "Recoupment was a common law concept, a defendant's claim arising out of the transaction that formed the basis

means after the MCCCDA's four-year expiration date" because rescission is not a form of recoupment and, "by its nature, cannot be accomplished by way of recoupment."

[13]In this respect, § 10 (*i*) (3) of the MCCCDA differs from TILA, which expressly references rescission by way of recoupment. In particular, 15 U.S.C. § 1635(i)(3) states that "[n]othing in this subsection [addressing rescission rights] affects a consumer's right of *rescission in recoupment* under State law" (emphasis added).

Section 10 (*i*) (3) was added to § 10 of the MCCCDA in 1996. See St. 1996, c. 238, § 5. The legislative history of § 10 (*i*) (3) indicates that it was added as part of a package that sought to conform the MCCCDA with recently enacted amendments to TILA, including the addition to TILA of § 1635(i)(3), quoted *supra*. Memorandum from Thomas J. Curry, Commissioner of Banks, to Nancy Merrick, Office of Consumer Affairs & Business Regulation, Sen. Doc. No. 2106, An Act Relative to Interstate Banking & Branching (July 26, 1996). It is obvious that the Legislature modeled § 10 (*i*) (3) on 15 U.S.C. § 1635(i)(3), but also obvious that it did not do so completely, because the phrase, "rescission in recoupment," does not appear in § 10 (*i*) (3). Despite this difference, we do not find anything in the legislative history relating to § 10 (*i*) (3) to suggest that the Legislature's omission of the word "rescission" — and more particularly the phrase, "rescission in recoupment" — was an intentional rejection of the idea that rescission used defensively might be a form of recoupment. As a consequence, we do not place weight on the language difference between § 10 (*i*) (3) and 15 U.S.C. § 1635(i)(3) in answering the certified question.

of the plaintiff's claim; . . . it served, if the defendant succeeded on it, to reduce or extinguish the plaintiff's claim, but it could not result in an affirmative recovery for the defendant." *Bose Corp.* v. *Consumers Union of U.S., Inc.,* 367 Mass. 424, 427-428 (1975). Beginning in the early Nineteenth Century, this court applied the doctrine to contract actions, recognizing the right of a defendant, facing suit for nonpayment on a contract, to assert defensively within the same action a claim for damages due to the plaintiff's own nonperformance of the same contract. See *Taft* v. *Inhabitants of Montague,* 14 Mass. 282, 285 (1817), overruling *Everett* v. *Gray,* 1 Mass. 101 (1804). See also *Carey* v. *Guillow,* 105 Mass. 18, 19-20 (1870) (discussing cases).[14] The concept of recoupment subsequently was extended beyond cases concerning the sale of goods to actions on promissory notes "given in payment of property sold or exchanged." *Harrington* v. *Stratton,* 22 Pick. 510, 513 (1839). See *Stacy* v. *Kemp,* 97 Mass. 166, 168 (1867) (defining recoupment as "an equitable set-off of damages which ought to be deducted from the plaintiff's demand" and allowing it in action on promissory note). Overall, recoupment was a significant development in the law because it allowed for "full and complete justice [to] be done to the parties in a single suit," thus "avoid[ing] circuity of action" caused when parties had no alternative but to bring a separate cross action to assert their defensive claims. *Harrington,* *supra* at 517.

Rescission is fundamentally different from recoupment. Rescission is the "unmaking" or "voidance" of a contract. Black's Law Dictionary 1420-1421 (9th ed. 2009). Its primary purpose is to "effect[] a return to the status quo." *Schwartz* v. *Rose,* 418 Mass. 41, 47 (1994). "Ordinarily one seeking rescission of a transaction must restore or offer to restore all that he received under it." *Bellefeuille* v. *Medeiros,* 335 Mass. 262, 266 (1957).

---

[14]Consumer credit transactions are matters of contract, and therefore we focus on recoupment as applied to contract actions. But at common law, recoupment was not limited solely to contract actions. See *Carey* v. *Guillow,* 105 Mass. 18, 20-21 (1870) ("The fact that the plaintiff sues in tort does not complicate the matter. It is not more difficult, or less desirable, in such an action, to have the whole litigation adjusted in a single suit . . . . The doctrine of recoupment is not novel, but is as ancient as the common law, and was in early times applied to actions founded in tort").

See *Ann & Hope, Inc.* v. *Muratore*, 42 Mass. App. Ct. 223, 230 (1997). However, "where complete restoration is not possible, rescission may . . . be granted upon such equitable conditions as would amply protect the rights of the defendant." *Bellefeuille* v. *Medeiros, supra.* See *J.C. Penney Co.* v. *Schulte Real Estate Co.*, 292 Mass. 42, 45 (1935) (strict return to status quo not essential in suit for rescission — court may "insert whatever conditions, if any, justice and equity may require").

Further, at common law, recoupment and rescission were consistently treated as separate, nonoverlapping remedies. See *Roche* v. *Gryzmish*, 277 Mass. 575, 579-580 (1931) (buyer defrauded in purchase of property may seek rescission or recoupment, not both: "[a]s these are inconsistent remedies, a person who has once elected to pursue one of them cannot afterwards seek the other"; claim for recoupment requires showing of damages by which debt is limited or reduced accordingly); *Gilmore* v. *Williams*, 162 Mass. 351, 352 (1894) ("When the plaintiff discovered the breach of warranty, he could avail himself of his rights in either [*sic*] of three ways. He might rescind the contract, return the property, and recover back his money; he might set up the breach of warranty as a defence in whole or in part to a claim upon the note, and have his damages allowed by way of recoupment; or he might pay the whole amount of the note and bring a suit for his damages" [citations omitted]); *Cox* v. *Wiley*, 183 Mass. 410, 412 (1903) (affirming rule of *Gilmore*); *Whiteside* v. *Brawley*, 152 Mass. 133, 134 (1890) ("Of course an action for the breach of a contract goes on the footing of affirming the contract relied on, and therefore is inconsistent with an action going on the footing of rescission"). See also *Ohl* v. *A.L. Smith Iron Works*, 66 F.2d 93, 99 (1st Cir. 1933) (party pleading breach of warranty by way of recoupment also cannot bring affirmative cross action for same claim).

. The language and structure of § 10 appear to reflect these common-law differences between rescission and recoupment. In particular, the separate treatment of rescission and recoupment by § 10 is in harmony with the common-law concepts of each, as well as with the common-law premise that the two are separate remedies. Thus, § 10 (*a*), (*b*), and (*f*) deal exclusively with rescission, and § 10 (*i*) (3) deals separately with recoupment.

Section 10 (*a*) and (*f*) impose strict time requirements on exercise of the right to rescind: § 10 (*a*) requires a borrower to rescind within three days of the transaction, extended if the creditor fails to comply fully with its disclosure requirements, but § 10 (*f*) terminates the right to rescind completely after four years. Moreover, consistent with the common-law concept of rescission generally, as set out in § 10 (*b*), rescinding a transaction under the MCCCDA essentially undoes the transaction: the security interest held by the creditor is cancelled, any money or property given in relation to the transaction (such as a down payment) is returned to the borrower, and the borrower then must return the property or, if that is inequitable, its reasonable value. See 209 Code Mass. Regs. § 32.23(4)(*a*)-(*d*). In other words, as is true of common-law rescission principles, the apparent intent and effect of rescission under § 10 (*b*) is to return the creditor and the borrower to the status quo ante — i.e., to how things were *before* the transaction existed — or as reasonably close to it as fairness permits. In contrast, under § 10 (*i*) (3), the right of recoupment contains no time limitations on assertion of the right. This accords with the common-law understanding of recoupment as a defensive mechanism whereby a defendant may, at any time, assert claims against the plaintiff in reduction of the plaintiff's claims when those claims arise out of the same transaction; it is an offsetting of liabilities *within* a transaction. See *Bose Corp.*, 367 Mass. at 427-428.

Recognizing that our common-law definition and understanding of recoupment is consistent with the language and structure of § 10, we are bound to conclude that insofar as the MCCCDA's provision for the right of recoupment in § 10 (*i*) (3) looks to and incorporates the common law, it does not include rescission as one type of defensive recoupment.

The plaintiffs argue against this conclusion because "much of the relief available to a borrower through rescission . . . has the effect of reducing amounts sought by a creditor that is foreclosing a mortgage, suing on a promissory note, or pursuing a claim against a bankruptcy estate." That may be so, but it is beside the point here because rescission and recoupment are separate, and common-law recoupment does not include the use of rescission as a form of recoupment.

Although we have answered the reported question, we address briefly the plaintiffs' statutory arguments. They first argue that legislative intent for rescission to be available by way of recoupment is "evident" because § 10 deals only with rescission rights, while damages for violations of the MCCCDA are addressed in G. L. c. 140D, § 32, a "wholly separate" section of the MCCCDA. This is not the case. Section 10 states explicitly that if a creditor violates any part of the section a court may award damages "under [§ 32] *not relating to the right to rescind*" (emphasis added). G. L. c. 140D, § 10 (*g*).[15]

The plaintiffs contend also that prohibiting them from rescinding their transaction by way of recoupment would render § 10 (*i*) (3) ineffective as a savings clause and ultimately superfluous because, without rescission, there would be no more claims to save. See *Geier* v. *American Honda Motor Co.*, 529 U.S. 861, 868 (2000). However, we agree with SunTrust that our reading of § 10 (*i*) (3) does not render the section meaningless. Rather, because § 10 (*g*) explicitly allows for damages as a form of relief for violations of § 10 in addition to rescission, a party clearly may seek those damages defensively, via recoupment, after expiration of the statutory period in § 10 (*f*). See O'Connell, *supra* at 17 n.11.[16] Therefore,

---

[15]General Laws c. 140D, § 10 (*g*), provides: "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under [§ 32] not relating to the right to rescind."

Section 32 allows a person to seek damages when a "creditor fails to comply with any requirement imposed under [c. 140D] or any rule or regulation issued thereunder including any requirement under [§ 10]." G. L. c. 140D, § 32 (*a*). See *id.* at § 32 (*a*) (1).

[16]While we concur in substance with the decision in *O'Connell* on this and other points previously discussed in this opinion, we disagree with the judge's conclusion in that case that MCCCDA borrowers do not meet the requirements for rescission because "rescission under the MCCCDA does not flow from the same transaction as that which forms the basis of the mortgagee's claim." O'Connell, *supra* at 10. See *Maxwell* v. *Fairbanks Capital Corp.*, 281 B.R. at 124, quoting *Fidler*, 226 B.R. at 737 (recoupment claim in bankruptcy context requires that: "(1) the TILA [or MCCCDA] violation and the creditor's debt arose from the same transaction, (2) [the claimant] is asserting her claim as a defense, and (3) the main action is timely" [quotations omitted]). In the present case, both the plaintiffs' rescission claim and SunTrust's foreclosure are based on the original extension of credit to the plaintiffs as borrowers — the 2005 refinancing transaction. Any rights that the plaintiffs assert are related to SunTrust's claim against them and stem from alleged

even though rescission is not a form of recoupment, § 10 (*i*) (3) remains a viable and relevant provision of the MCCCDA.

Moreover, borrowers like the plaintiffs who may have a claim for damages to assert defensively in recoupment against a creditor's claim are not limited to the statutory damages provided in § 32 in the MCCCDA. For example, borrowers can assert a claim for unfair or deceptive acts or practices in violation of G. L. c. 93A against the creditor, so long as the alleged c. 93A violation is connected to the underlying credit transaction.[17] The fact that borrowers may assert any available damages claim in recoupment after expiration of the four-year period for rescission underscores the point that § 10 (*i*) (3) is not rendered meaningless without the ability to claim rescission in recoupment.[18]

4. *Conclusion.* For the reasons discussed, we answer the reported question in the negative. The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Bankruptcy Court for the District of Massachusetts, as the answer to the question certified, and will also transmit a copy to each party.

---

violations of § 10 (*a*)'s disclosure requirements by the creditor (Summit) at the closing. See *Fidler* v. *Central Coop. Bank,* 210 B.R. 411, 420 (Bankr. D. Mass. 1997) (defining original loan refinancing as "same transaction" that gave rise to subsequent rescission claim).

[17]Here, however, because the plaintiffs' claim alleging a violation of G. L. c. 93A is tied to their asserted right to rescission, which does not exist, their c. 93A claim currently does not appear to offer relief.

[18]In its amicus brief, the National Consumer Law Center advances a strong argument in support of the plaintiffs, essentially asserting that permitting rescission via recoupment is good public policy that "balances the scales between lenders and consumers" because it permits a borrower to keep his or her home while providing a means for the mortgage holder to be repaid. Notwithstanding the import of this argument as a practical equitable remedy, the fact remains that, at present, the right to rescission in recoupment is simply not a part of the MCCCDA. This is not to say that the statute could not be amended to include a provision allowing for rescission to be used defensively by way of recoupment, but only that in its present form, the MCCCDA does not provide for such a right.